**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

IN RE:  THE THIRTY-FIVE STATEWIDE    : No. 175 MM 2014
INVESTIGATING GRAND JURY            :
                                              :
                                              :
PETITION OF:  ATTORNEY GENERAL   :
KATHLEEN G. KANE                   :

## ORDER

**PER CURIAM**

    **AND NOW**, this 26th day of August, 2015, upon the request of the supervising judge for removal of the seal from all matters involving the 35th Statewide Investigating Grand Jury and the investigation of Attorney General Kathleen Kane which have been lodged in this Court, save for grand jury materials such as testimony, exhibits, and <u>in camera</u> proceedings, and based on the supervising judge's assurance that there are no present grand jury secrecy concerns relative to such unsealing, it is hereby **ORDERED** that the seal is lifted upon such terms.

M.D. Misc. Dkt.
175 MM 2014

FILED
11/13/2014
Supreme Court
Middle District

## IN THE SUPREME COURT OF PENNSYLVANIA
### HARRISBURG DISTRICT

IN RE:

THE THIRTY-FIVE STATEWIDE
INVESTIGATING GRAND JURY

SUPREME COURT OF
PENNSYLVANIA NO. 176 M.D.
MISC. DKT. 2012

MONTGOMERY COUNTY
COMMON PLEAS
M.D. 2644-2012

EMERGENCY APPLICATION FOR
EXTRAORDINARY RELIEF

UNSEALED PER
ORDER OF THE
COURT DATED
AUGUST 26, 2015

## ATTORNEY GENERAL KATHLEEN G. KANE'S EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF

Minora, Minora, Colbassani,
Krowiak, Mattioli & Munley
Amil M. Minora, Esq.
Attorney ID: 22703
700 Vine Street
Scranton, PA 18510
*Attorney for Attorney General Kathleen G. Kane*

Winston & Strawn, LLP
Gerald L. Shargel, Esq.
200 Park Avenue
New York, NY 10166
*Attorney Pro Hac Vice for*
*Attorney General Kathleen G. Kane*

Received in Supreme Court

NOV 1 3 2014

Middle

## IN THE SUPREME COURT OF PENNSYLVANIA
## HARRISBURG DISTRICT

IN RE:

THE THIRTY-FIVE STATEWIDE
INVESTIGATING GRAND JURY

SUPREME COURT OF
PENNSYLVANIA NO. 176 M.D.
MISC. DKT. 2012

MONTGOMERY COUNTY
COMMON PLEAS
M.D. 2644-2012

NOTICE OF EMERGENCY APPLICATION
FOR EXTRAORDINARY RELIEF

## EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF

Attorney General Kathleen G. Kane, by and through her counsel, Amil M. Minora, Esq.,

hereby submits an Emergency Application for Extraordinary Relief to (I) quash the submission

initiating a grand jury investigation into an alleged "leak" of information from a five-year-old

investigation, and the subpoena issued for her appearance and testimony; and (II) to vacate the

related protective order.

1. This Court has the authority to entertain this application pursuant to the Section 3309 of

   the Pennsylvania Rules of Appellate Procedure; Section 726 of Pennsylvania's Judiciary

   and Judicial Procedure (42 Pa.C.S. § 726); and Kings Bench Power.

2. The annexed Attorney Verification and Memorandum of Law are respectfully submitted

   in support of this Application.

3. Due to the confidential subject matter of this Application, much of which is subject to a

   protective order, we respectfully request that this Application be filed under seal. A

   separate motion to file under seal is appended to this Application.

Minora, Minora, Colbassani,
Krowiak, Mattioli & Munley

*Amil Minora /RMK*

Amil M. Minora, Esq.
Attorney for Attorney General Kathleen G. Kane
Attorney ID: 22703
700 Vine Street
Scranton, PA 18510
(570) 961-1616


Winston & Strawn, LLP

*Gerald Shargel /RMK*

Gerald L. Shargel, Esq.
Attorney *Pro Hac Vice* for
Attorney General Kathleen G. Kane
200 Park Avenue
New York, NY 10166
(212) 294-2637


Dated: November 12, 2014
        New York, New York


To:     Clerk of Court

        Thomas E. Carluccio
        *Special Prosecutor*

# IN THE SUPREME COURT OF PENNSYLVANIA
## HARRISBURG DISTRICT

IN RE:

THE THIRTY-FIVE STATEWIDE
INVESTIGATING GRAND JURY

SUPREME COURT OF
PENNSYLVANIA NO. 176 M.D.
MISC. DKT. 2012

MONTGOMERY COUNTY
COMMON PLEAS
M.D. 2644-2012

EMERGENCY APPLICATION FOR
EXTRAORDINARY RELIEF

PROOF OF SERVICE

I hereby certify that I am this day causing the service of the foregoing Emergency Application for Extraordinary Relief upon the persons and in the manner indicated below, which satisfies the requirements of Pa. R.A.P. 121:

Service by Federal Express addressed as follows:

Thomas E. Carluccio
Special Prosecutor
(484) 674-2899
Law Office of Thomas E. Carluccio
1000 Germantown Pike, Suite D-3
Plymouth Meeting, PA 19462

Date: November 12, 2014

Minora, Minora, Colbassani,
Krowiak, Mattioli & Munley

*Amil Minora /RMK*

Amil M. Minora, Esq.
Attorney for Attorney General Kathleen G. Kane
Attorney ID 22703
700 Vine Street
Scranton, PA 18510
(570) 961-1616

Received in Supreme Court

NOV 1 3 2014

Middle

# IN THE SUPREME COURT OF PENNSYLVANIA
## HARRISBURG DISTRICT

IN RE:

THE THIRTY-FIVE STATEWIDE
INVESTIGATING GRAND JURY

SUPREME COURT OF
PENNSYLVANIA NO. 176 M.D.
MISC. DKT. 2012

MONTGOMERY COUNTY
COMMON PLEAS
M.D. 2644-2012

MOTION TO FILE EMERGENCY
APPLICATION FOR EXTRAORDINARY
RELIEF UNDER SEAL

ATTORNEY VERIFICATION

I, Amil M. Minora, Esq., hereby verify the following:

1. I am an attorney duly admitted to practice in Pennsylvania and before this Court.

2. My office, Minora, Minora, Colbassani, Krowiak, Mattioli & Munley is located at 700 Vine Street Scranton, PA 18510.

3. I represent Attorney General Kathleen G. Kane in this matter, and as such, am fully familiar with the facts and circumstances of this case.

4. This Verification is respectfully submitted in support of Attorney General Kane's motion to file the enclosed Emergency Application for Extraordinary Relief under seal.

5. I hereby state that the facts set forth in this motion are true and correct (or are true and correct to the best of my knowledge, information and belief) and that I expect to be able to prove the same at a hearing held in this matter. I understand that the statements herein are made subject to the penalties of 18 Pa. C.S. § 4904.

Dated: November 12, 2014
New York, New York

Minora, Minora, Colbassani,
Krowiak, Mattioli & Munley

*Amil Minora / cmk*

Amil M. Minora, Esq.
*Attorney for Attorney General Kathleen G. Kane*
Attorney ID: 22703
700 Vine Street
Scranton, PA 18510
(570) 961-1616

Minora, Minora, Colbassani,
Krowiak, Mattioli & Munley

_Amil M. Minora, Esq._
Attorney for Attorney General Kathleen G. Kane
Attorney ID: 22703
700 Vine Street
Scranton, PA 18510
(570) 961-1616


Winston & Strawn, LLP

_Gerald L. Shargel, Esq._
Attorney *Pro Hac Vice* for
Attorney General Kathleen G. Kane
200 Park Avenue
New York, NY 10166
(212) 294-2637


Dated: November 12, 2014
       New York, New York


To:    Clerk of Court

       Thomas E. Carluccio
       *Special Prosecutor*

CONTAINS CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER
REQUEST TO BE FILED UNDER SEAL

Dated: November 12, 2014

Minora, Minora, Colbassani,
Krowiak, Mattioli & Munley

_____

Amil M. Minora, Esq.
Attorney for Attorney General Kathleen G. Kane
Attorney ID: 22703
700 Vine Street
Scranton, PA 18510
(570) 961-1616


Winston & Strawn, LLP

_____

Gerald L. Shargel, Esq.
Attorney *Pro Hac Vice* for Attorney General
Kathleen G. Kane
200 Park Avenue
New York, NY 10166
(212) 294-2637

Minora, Minora, Colbassani,
Krowiak, Mattioli & Munley

Amil M. Minora, Esq.
*Attorney for Attorney General Kathleen G. Kane*
Attorney ID: 22703
700 Vine Street
Scranton, PA 18510
(570) 961-1616

Winston & Strawn, LLP

Gerald L. Shargel, Esq.
*Attorney Pro Hac Vice for*
*Attorney General Kathleen G. Kane*
200 Park Avenue
New York, NY 10166
(212) 294-2637

Dated:     November 12, 2014
           New York, New York

To:        Clerk of Court

           Thomas E. Carluccio
           *Special Prosecutor*

Dated: November 12, 2014
      New York, New York

                    Minora, Minora, Colbassani,
                    Krowiak, Mattioli & Munley

                    Amil M. Minora, Esq.
                    *Attorney for Attorney General Kathleen G. Kane*
                    Attorney ID: 22703
                    700 Vine Street
                    Scranton, PA 18510
                    (570) 961-1616

Dated: November 12, 2014
New York, New York

Minora, Minora, Colbassani,
Krowiak, Mattioli & Munley

Amil M. Minora, Esq.
*Attorney for Attorney General Kathleen G. Kane*
Attorney ID: 22703
700 Vine Street
Scranton, PA 18510
(570) 961-1616

Debra McCloskey Todd
Pennsylvania Supreme Court Justice
301 GRANT ST STE 3130
PITTSBURGH , PA  15219-6401
United States
412-565-2680

Max Baer
Pennsylvania Supreme Court Justice
301 GRANT ST STE 2525
PITTSBURGH , PA  15219-6415
United States
412-467-2220

J. Michael Eakin
Pennsylvania Supreme Court Justice
4720 OLD GETTYSBURG RD STE 405
MECHANICSBURG , PA  17055-8419
United States
717-731-0461

Thomas G. Saylor
Pennsylvania Supreme Court Justice
200 N 3RD ST FL 16
HARRISBURG , PA  17101-1590
United States
717-772-1599

Date: November 13, 2014

Minora, Minora, Colbassani,
Krowiak, Mattioli & Munley

Amil M. Minora, Esq.
Attorney for Attorney General Kathleen G. Kane
Attorney ID 22703
700 Vine Street
Scranton, PA 18510
(570) 961-1616

2

Debra McCloskey Todd
Pennsylvania Supreme Court Justice
301 GRANT ST STE 3130
PITTSBURGH , PA  15219-6401
United States
412-565-2680

Max Baer
Pennsylvania Supreme Court Justice
301 GRANT ST STE 2525
PITTSBURGH , PA  15219-6415
United States
412-467-2220

J. Michael Eakin
Pennsylvania Supreme Court Justice
4720 OLD GETTYSBURG RD STE 405
MECHANICSBURG , PA  17055-8419
United States
717-731-0461

Thomas G. Saylor
Pennsylvania Supreme Court Justice
200 N 3RD ST FL 16
HARRISBURG , PA  17101-1590
United States
717-772-1599

Date: November 13, 2014

Minora, Minora, Colbassani,
Krowjak, Mattioli & Munley

Amil M. Minora, Esq.
Attorney for Attorney General Kathleen G. Kane
Attorney ID 22703
700 Vine Street
Scranton, PA 18510 .
(570) 961-1616

*175 MM14*

# IN THE SUPREME COURT OF PENNSYLVANIA
## HARRISBURG DISTRICT

IN RE:

THE THIRTY-FIVE STATEWIDE
INVESTIGATING GRAND JURY

SUPREME COURT OF
PENNSYLVANIA NO. 176 M.D.
MISC. DKT. 2012

MONTGOMERY COUNTY
COMMON PLEAS
M.D. 2644-2012

MOTION TO FILE EMERGENCY
APPLICATION FOR EXTRAORDINARY
RELIEF UNDER SEAL

AMENDED PROOF OF SERVICE

I hereby certify that, on November 12, 2014, I caused the service of the Motion to File Emergency Application for Extraordinary Relief Under Seal upon the persons and in the manner indicated below, which satisfies the requirements of Pa. R.A.P. 121:

Service by Federal Express addressed as follows:

Thomas E. Carluccio
Special Prosecutor
(484) 674-2899
Law Office of Thomas E. Carluccio
1000 Germantown Pike, Suite D-3
Plymouth Meeting, PA 19462

Ronald D. Castille
Chief Justice
Pennsylvania Supreme Court
1818 MARKET ST STE 3730
PHILADELPHIA , PA  19103-3639
United States
215-560-5663

Correale F. Stevens
Pennsylvania Supreme Court Justice
10 FOX RUN RD
DRUMS , PA  18222-2155
United States
570-788-2897

Received in Supreme Court

NOV 1 4 2014

Middle

Debra McCloskey Todd
Pennsylvania Supreme Court Justice
301 GRANT ST STE 3130
PITTSBURGH , PA  15219-6401
United States
412-565-2680

Max Baer
Pennsylvania Supreme Court Justice
301 GRANT ST STE 2525
PITTSBURGH , PA  15219-6415
United States
412-467-2220

J. Michael Eakin
Pennsylvania Supreme Court Justice
4720 OLD GETTYSBURG RD STE 405
MECHANICSBURG , PA  17055-8419
United States
717-731-0461

Thomas G. Saylor
Pennsylvania Supreme Court Justice
200 N 3RD ST FL 16
HARRISBURG , PA  17101-1590
United States
717-772-1599

Date: November 13, 2014

Minora, Minora, Colbassani,
Krowiak, Mattioli & Munley

*Amil Minora/KMK*

Amil M. Minora, Esq.
Attorney for Attorney General Kathleen G. Kane
Attorney ID 22703
700 Vine Street
Scranton, PA 18510
(570) 961-1616

**Middle**

# IN THE SUPREME COURT OF PENNSYLVANIA
## HARRISBURG DISTRICT

IN RE:

THE THIRTY-FIVE STATEWIDE
INVESTIGATING GRAND JURY

SUPREME COURT OF
PENNSYLVANIA NO. 176 M.D.
MISC. DKT. 2012

MONTGOMERY COUNTY
COMMON PLEAS
M.D. 2644-2012

EMERGENCY APPLICATION FOR
EXTRAORDINARY RELIEF

AMENDED PROOF OF SERVICE

I hereby certify that, on November 12, 2014, I caused the service of the Emergency Application for Extraordinary Relief upon the persons and in the manner indicated below, which satisfies the requirements of Pa. R.A.P. 121:

Service by Federal Express addressed as follows:

Thomas E. Carluccio
Special Prosecutor
(484) 674-2899
Law Office of Thomas E. Carluccio
1000 Germantown Pike, Suite D-3
Plymouth Meeting, PA 19462

Ronald D. Castille
Chief Justice
Pennsylvania Supreme Court
1818 MARKET ST STE 3730
PHILADELPHIA , PA  19103-3639
United States
215-560-5663

Correale F. Stevens
Pennsylvania Supreme Court Justice
10 FOX RUN RD
DRUMS , PA 18222-2155
United States
570-788-2897

**Received in Supreme Court**

**NOV 1 4 2014**

**Middle**

Debra McCloskey Todd
Pennsylvania Supreme Court Justice
301 GRANT ST STE 3130
PITTSBURGH , PA  15219-6401
United States
412-565-2680

Max Baer
Pennsylvania Supreme Court Justice
301 GRANT ST STE 2525
PITTSBURGH , PA  15219-6415
United States
412-467-2220

J. Michael Eakin
Pennsylvania Supreme Court Justice
4720 OLD GETTYSBURG RD STE 405
MECHANICSBURG , PA  17055-8419
United States
717-731-0461

Thomas G. Saylor
Pennsylvania Supreme Court Justice
200 N 3RD ST FL 16
HARRISBURG , PA  17101-1590
United States
717-772-1599

Date: November 13, 2014

Minora, Minora, Colbassani,
Krowiak, Mattioli & Munley

_____
Amil M. Minora, Esq.
Attorney for Attorney General Kathleen G. Kane
Attorney ID 22703
700 Vine Street
Scranton, PA 18510
(570) 961-1616

2

M.D. Misc. Dkt.
175 MM 2014

FILED
11/13/2014
Supreme Court
Middle District

IN THE SUPREME COURT OF PENNSYLVANIA
HARRISBURG DISTRICT

UNSEALED PER ORDER
OF THE COURT DATED
AUGUST 26, 2015

IN RE:

THE THIRTY-FIVE STATEWIDE
INVESTIGATING GRAND JURY

SUPREME COURT OF
PENNSYLVANIA NO. 176 M.D.
MISC. DKT. 2012

MONTGOMERY COUNTY
COMMON PLEAS
M.D. 2644-2012

NOTICE OF MOTION TO FILE
EMERGENCY APPLICATION FOR
EXTRAORDINARY RELIEF UNDER SEAL

## MOTION TO FILE UNDER SEAL

Attorney General Kathleen G. Kane, by and through her counsel, Amil M. Minora, Esq.,

hereby moves to file the enclosed Emergency Application for Extraordinary Relief under seal.

1. Attorney General Kane's Emergency Application for Extraordinary Relief requests that

   this Court (I) quash the submission initiating a grand jury investigation into an alleged

   "leak" of information from a five-year-old investigation, and the subpoena issued for her

   appearance and testimony; and (II) to vacate the related protective order.

2. Most, if not all, of the facts supporting the Application are highly confidential and subject

   to a protective order. As such, Attorney General Kane respectfully requests that the

   Application be filed under seal.

3. The annexed Attorney Verification is respectfully submitted in support of this

   Application.

Received In Supreme Court

NOV 1 3 2014

Middle

Minora, Minora, Colbassani,
Krowiak, Mattioli & Munley

*Amil Minora /emr*
Amil M. Minora, Esq.
*Attorney for Attorney General Kathleen G. Kane*
Attorney ID: 22703
700 Vine Street
Scranton, PA 18510
(570) 961-1616

Winston & Strawn, LLP

*Gerald Shargel /emk*
Gerald L. Shargel, Esq.
*Attorney Pro Hac Vice for*
*Attorney General Kathleen G. Kane*
200 Park Avenue
New York, NY 10166
(212) 294-2637

Dated:    November 12, 2014
           New York, New York

To:    Clerk of Court

        Thomas E. Carluccio
        *Special Prosecutor*

## IN THE SUPREME COURT OF PENNSYLVANIA
## HARRISBURG DISTRICT

IN RE:

THE THIRTY-FIVE STATEWIDE
INVESTIGATING GRAND JURY

SUPREME COURT OF
PENNSYLVANIA NO. 176 M.D.
MISC. DKT. 2012

MONTGOMERY COUNTY
COMMON PLEAS
M.D. 2644-2012

MOTION TO FILE EMERGENCY
APPLICATION FOR EXTRAORDINARY
RELIEF UNDER SEAL

PROOF OF SERVICE

I hereby certify that I am this day causing the service of the foregoing Motion to File Emergency Application for Extraordinary Relief Under Seal upon the persons and in the manner indicated below, which satisfies the requirements of Pa. R.A.P. 121:

Service by Federal Express addressed as follows:

Thomas E. Carluccio
Special Prosecutor
(484) 674-2899
Law Office of Thomas E. Carluccio
1000 Germantown Pike, Suite D-3
Plymouth Meeting, PA 19462

Date: November 12, 2014

Minora, Minora, Colbassani,
Krowiak, Mattioli & Munley

_Amil Munley / PMK_
Amil M. Minora, Esq.
Attorney for Attorney General Kathleen G. Kane
Attorney ID 22703
700 Vine Street
Scranton, PA 18510
(570) 961-1616

Received in Supreme Court

NOV 1 3 2014

Middle

## IN THE SUPREME COURT OF PENNSYLVANIA
## HARRISBURG DISTRICT

IN RE:

THE THIRTY-FIVE STATEWIDE
INVESTIGATING GRAND JURY

SUPREME COURT OF
PENNSYLVANIA NO. 176 M.D.
MISC. DKT. 2012

MONTGOMERY COUNTY
COMMON PLEAS
M.D. 2644-2012

EMERGENCY APPLICATION FOR
EXTRAORDINARY RELIEF

ATTORNEY VERIFICATION

I, Amil M. Minora, Esq., hereby verify the following:

1. I am an attorney duly admitted to practice in Pennsylvania and before this Court.

2. My office, Minora, Minora, Colbassani, Krowiak, Mattioli & Munley is located at 700 Vine Street Scranton, PA 18510.

3. I represent Attorney General Kathleen G. Kane in this matter, and as such, am fully familiar with the facts and circumstances of this case.

4. This Verification is respectfully submitted in support of Attorney General Kane's Emergency Application for Extraordinary Relief.

5. I hereby state that the facts set forth in this motion are true and correct (or are true and correct to the best of my knowledge, information and belief) and that I expect to be able to prove the same at a hearing held in this matter. I understand that the statements herein are made subject to the penalties of 18 Pa. C.S. § 4904.

Dated: November 12, 2014
New York, New York

Minora, Minora, Colbassani,
Krowiak, Mattioli & Munley

*Amil Minora /RMK*

Amil M. Minora, Esq.
*Attorney for Attorney General Kathleen G. Kane*
Attorney ID: 22703
700 Vine Street
Scranton, PA 18510
(570) 961-1616

M.D. Misc. Dkt.
175 MM 2014

FILED
11/13/2014
Supreme Court
Middle District

IN THE SUPREME COURT OF PENNSYLVANIA
HARRISBURG DISTRICT

UNSEALED PER ORDER
OF THE COURT DATED
AUGUST 26, 2015

IN RE:

THE THIRTY-FIVE STATEWIDE
INVESTIGATING GRAND JURY

SUPREME COURT OF
PENNSYLVANIA NO. 176 M.D.
MISC. DKT. 2012

MONTGOMERY COUNTY
COMMON PLEAS
M.D. 2644-2012

EMERGENCY APPLICATION FOR
EXTRAORDINARY RELIEF

MEMORANDUM OF LAW

## ATTORNEY GENERAL KATHLEEN G. KANE'S MEMORANDUM OF LAW IN SUPPORT OF HER EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF

Minora, Minora, Colbassani,
Krowiak, Mattioli & Munley
Amil M. Minora, Esq.
Attorney ID: 22703
700 Vine Street
Scranton, PA 18510
*Attorney for Attorney General Kathleen G. Kane*

Winston & Strawn, LLP
Gerald L. Shargel, Esq.
200 Park Avenue
New York, NY 10166
*Attorney Pro Hac Vice for*
*Attorney General Kathleen G. Kane*

Received in Supreme Court

NOV 1 3 2014

Middle

CONTAINS CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER
REQUEST TO BE FILED UNDER SEAL

IN THE SUPREME COURT OF PENNSYLVANIA
HARRISBURG DISTRICT

| | |
|---|---|
| IN RE: | EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF |
| THE THIRTY-FIVE STATEWIDE INVESTIGATING GRAND JURY | |
| SUPREME COURT OF PENNSYLVANIA NO. 176 M.D. MISC. DKT. 2012 | |
| MONTGOMERY COUNTY COMMON PLEAS · M.D. 2644-2012 | |

**Emergency Application for Extraordinary Relief Pursuant to Pa.R.A.P. 3309, 42 Pa.C.S. § 726 and Kings Bench Power**

**MEMORANDUM OF LAW**

**INTRODUCTION**

This memorandum is respectfully submitted in support of Attorney General Kathleen G. Kane's Emergency Application for Extraordinary Relief Pursuant to Pa.R.A.P. 3309, 42 Pa.C.S. § 726 and Kings Bench Power: (I) to quash the submission initiating a grand jury investigation into an alleged "leak" of information from a five-year-old investigation, and the subpoena issued for her appearance and testimony; and (II) to vacate the related protective order.

This is "an issue of immediate public importance," and we respectfully request that this Court "cause right and justice to be done." See 42 Pa.C.S. § 726. Attorney General Kane is being prevented from protecting the people of the Commonwealth of Pennsylvania, carrying out the duties of her Office, and removing criminals from positions of power solely by the machinations of two individuals.

1

Two former employees of the Office of Attorney General – Frank Fina and E. Marc Costanzo – corruptly manufactured this grand jury investigation to protect their own jobs and reputations. For years, Fina and Costanzo had viewed and distributed pornographic, misogynistic, racist, obscene and offensive emails using their state-owned computers.[1] Attorney General Kane had uncovered those emails, and was set to release them to the public. Faced with their imminent personal and professional disgrace and desperate to keep their wrongdoing secret, Fina and Costanzo devised a plot to block their obscene emails from being released to the public. They triggered this grand jury investigation, they made materially misleading statements to the court to obtain a protective order, and through their scheming they avoided public exposure.

The grand jury proceeding and the related protective order are now preventing Attorney General Kane from investigating and potentially prosecuting Fina and Costanzo. As a result, these two men – peddlers of pornography and obscenity depositing state paychecks – are allowed to maintain their positions as Assistant District Attorneys in the Philadelphia District Attorney's Office. This is an injustice of the highest order that cannot be allowed to stand.[2]

Frank Fina and E. Marc Costanzo should not be permitted to bury the truth of their own gross misconduct by abusing the powers of the investigating grand jury. We respectfully submit that the submission initiating this investigation and the subpoena to Attorney General Kane should be quashed, and the protective order vacated, in the interest of justice.[3]

---

[1]     A selection of these emails is attached as Exhibit A.

[2]     Numerous state employees have rightfully lost their jobs based on the emails collected and produced by the Office of Attorney General. This includes, but is not limited to, Justice Seamus P. McCaffery of this Court. See In re: Mr. Justice Seamus P. McCaffery of the Supreme Court of Pennsylvania, No. 430, Judicial Administration Docket (Castille, J., Concurring Statement).

2

## STATEMENT OF FACTS

Fina and Costanzo's Years of Gross Misconduct

For years, former Deputy Attorneys General Frank Fina and E. Marc Costanzo abused their positions as state prosecutors and the trust placed in them by the people of the Commonwealth of Pennsylvania. They regularly received, viewed, possessed and distributed misogynistic, pornographic, racist, obscene and offense emails on their state-owned computers. A selection of these emails is attached as Exhibit A.

The emails include, among other things:

- An email forwarded by Fina attaching pornographic photographs with the subject "New Office Motivation Policy Posters" (Exhibit A at 001);

- An email forwarded by Fina to an attorney outside the Office of Attorney General attaching inappropriate images with the inserted comment "My favorite is rainbows," referring to a photograph of a woman in rainbow-patterned underwear (Exhibit A at 007, 026);

- An email forwarded by Fina attaching altered nude photographs purporting to be of former Alaska Governor Sarah Palin (Exhibit A at 032);

- Email correspondence involving Fina referencing "a murder case" on which he was apparently working in his official capacity, and attaching sexually suggestive photographs of a female tennis player (Exhibit A at 040);

---

[3] In the event that the Court cannot fully resolve this Application before November 17, 2014, we request that the Court immediately order a stay of the subpoena issued for Attorney General Kane's appearance and testimony on that date.

3

- An email forwarded by Fina attaching pornographic photographs showing, among other things, a woman inserting a banana into her vagina, with the subject "Banana Split" (Exhibit A at 069, 083-086);

- An email received by Fina from "Gregory J Policare, Narcotics Agent, PA Office of Attorney General," attaching a photograph of a topless woman (Exhibit A at 099, 102);

- An email received by Costanzo with the subject "Hot Ghetto Mess!" containing race- and class-based discriminatory text and attaching racist photographs, including a photograph of an African American baby holding a rifle (Exhibit A at 103, 145);

- An email received by Fina and Costanzo with the subject "Men in Training" attaching photographs depicting, among other things, a young boy looking into the underwear of a young girl (Exhibit A at 146, 150);

- An email forwarded to Fina and Costanzo attaching pornographic photographs showing, among other things, a woman inserting a beer glass into her vagina, with the subject "7 XXX Ways to Serve a Man a Drink" (Exhibit A at 157, 163);

- An email forwarded to Fina and Costanzo attaching pornographic photographs showing, among other things, a woman inserting a pacifier into her vagina, with the subject "a New Year's wish for you" (Exhibit A at 166, 178);

- An email received by Fina and Costanzo attaching an altered nude photograph purporting to be of President Barack Obama and former First Lady Hillary Clinton (Exhibit A at 310);

- An email received by Fina with the subject "Great T-Shirts" attaching, among other things, a photograph of a young woman wearing a shirt with the slogan "Admit it: You'd Go To Jail For This" (Exhibit A at 375, 379).

4

Exhibit A contains only a small selection of the hundreds of similar emails sent and received by Fina and Costanzo from their state-owned computers. Chief Justice Castille recently described similar emails as "sexually explicit pornographic emails" which are "clearly obscene and may violate the Crimes Code Section on Obscenity[.]" In re: Mr. Justice Seamus P. McCaffery of the Supreme Court of Pennsylvania, No. 430, Judicial Administration Docket (Concurring Statement), at 1.

## Attorney General Kane Uncovers Fina and Costanzo's Criminal Conduct

In February 2014, newly-elected Attorney General Kathleen Kane set in motion a series of events that threatened to expose Fina and Costanzo's potentially criminal misconduct.

Attorney General Kane had been elected on a platform of public transparency. One of her first acts in office was to review the Jerry Sandusky child sexual-abuse prosecution, to determine why the investigation of Sandusky had suffered through so many delays. Attorney General Kane appointed Professor Geoffrey Moulton on February 4, 2013 to lead that review. As part of the review, Moulton reviewed emails sent and received by the Office of Attorney General.

In October 2013, the scope of the information available to Moulton and his team radically expanded. A Special Agent working on the review devised a process to retrieve emails that had been deleted from the system. Suddenly, Moulton had access to a much larger universe of emails sent and received by employees of the Office of Attorney General.

That larger universe included emails that Frank Fina and E. Marc Costanzo believed they had deleted and hidden forever.

<u>Fina Attempts to Conceal His Crimes But Fails</u>

When Frank Fina learned that Moulton had obtained access to his previously-deleted

emails, he knew that his career was on the verge of collapse. The obscene emails he had sent

and received from his state-owned computer were now in the hands of Professor Moulton and

Attorney General Kane. In accordance with Kane's policy of public disclosure and transparency,

those emails would soon be released to the public. Personally and professionally, Fina would be

ruined.

Between October 2013 and April 2014, Fina embarked on a campaign to suppress the

emails that would rightfully destroy him. He failed. On April 24, 2014, Judge Krumenacker

denied Fina's request to block the public release of his emails.


<u>Fina and Costanzo Scheme to Conceal their Crimes by Abusing the Grand Jury Process</u>

The next step in Frank Fina's plot took just over a month to complete. On May 29, 2014,

he and E. Marc Costanzo secured the appointment of a Special Prosecutor to investigate

Attorney General Kane in connection with an alleged leak of grand jury materials.

On September 11, 2014, Attorney General Kane received a subpoena under which she

was ordered to appear as a witness before the Pennsylvania Statewide Investigating Grand Jury

"to testify and give evidence regarding alleged violations of the laws of the Commonwealth of

Pennsylvania[.]" The subpoena was signed by Supervising Judge William R. Carpenter. It

instructed Attorney General Kane to direct any questions about her appearance to Deputy

Attorney General Thomas Carluccio, the Special Prosecutor assigned to the case.

Carluccio was charged with investigating whether Attorney General Kane unlawfully

disclosed confidential grand jury material. The grand jury material allegedly disclosed was an

6

internal memorandum about a 2009 grand jury investigation into the finances of J. Whyatt Mondesire, the former head of the NAACP Philadelphia chapter.

At the time of the Mondesire grand jury proceedings (beginning and ending in 2009), Attorney General Kane was a stay-at-home mother. She was not involved in any capacity in the Mondesire grand jury proceedings. Accordingly, she took no oath of secrecy with regard to those proceedings. Attorney General Kane was not sworn into office until January 15, 2013.

Fina and Costanzo, both experienced prosecutors, knew that Attorney General Kane could not have violated the law in connection with the release of any materials related to the five-year-old Mondesire grand jury investigation. Pursuant to 42 Pa.C.S. § 4549(b), only "a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony ... shall be sworn to secrecy" regarding "matters occurring before the grand jury[.]" 42 Pa.C.S. § 4549(b). "All such persons," and *only* those persons, pursuant to the statute, "shall be in contempt of court if they reveal any information which they are sworn to keep secret." See id. Attorney General Kane therefore could not have violated the law in connection with any disclosure related to the 2009 grand jury proceeding because she was not sworn to secrecy with regard to that proceeding. See Castellani v. Scranton Times, L.P., 598 Pa. 283, 307 (Pa. 2008) ("Only the grand jury participants are bound by the oath of secrecy" and only they have a duty "to uphold the integrity of the grand jury process. ... [O]nly the individual swearing the oath can violate grand jury secrecy" and it is only that individual "who has the capacity to commit a crime.").

This legal barrier was immaterial to Fina and Costanzo, because they only required the initiation of investigating grand jury proceedings.

7

<u>Fina and Costanzo Make Materially Misleading Statements Under Oath</u>

Fina's scheme to prevent Attorney General Kane from releasing his obscene emails was nearly complete. He had secured an investigation into the conduct of the Office of Attorney General. But he still needed an Order that would block the release of his obscene emails.

On August 25, 2014, Fina and Costanzo appeared before Judge Carpenter.[4] Both Fina and Costanzo provided the Court with materially misleading descriptions of the emails that they hoped to conceal from the public, in an effort to secure a protective order barring public release of the emails.

Instead of appropriately describing the emails that were uncovered as pornography, obscenity and depravity of the highest order, Fina instead told the Court that the issue was "personal emails of mine that had been uncovered during the review of the Sandusky case by Geoffrey Moulton."

Costanzo described the emails as "personal and private emails that were received by me and others who are current and former members of the staff, of a personal nature." Costanzo continued: "Just so it's clear, the sending and receipt of personal emails was absolutely authorized by the Attorney General. We were permitted to both send and receive emails of a personal nature with no actual caveats in place in terms of their possible dissemination in the future."

Neither Fina nor Costanzo offered any true and complete description of the emails that they were seeking to keep secret. They did not inform the court that their "private" emails were actually collections of pornography received and viewed on state-owned computers.

---

[4]    A transcript of the appearance was submitted to this Court by Judge Carpenter, in connection with a separate challenge to the protective order by the Office of Attorney General.

Fina and Costanzo Realize their Corrupt Objective by Obtaining a Protective Order

On August 27, 2014, the Court issued a protective order based on Fina and Costanzo's materially misleading testimony. (Exhibit B, Order dated August 27, 2014.) That order prevented the Office of Attorney General from releasing the pornographic and obscene emails received by Fina and Costanzo on their state-owned computers.[5] As a result, it also allowed Fina and Costanzo to keep their jobs as state prosecutors despite having themselves engaged in an ongoing course of potentially criminal conduct.

## ARGUMENT

## POINT ONE

The Submission Initiating the Grand Jury Investigation and the Subpoena Issued for Attorney General Kane's Appearance and Testimony Should be Quashed

The submission initiating grand jury investigation and the subpoena issued to Attorney General Kane should be quashed because these grand jury proceedings are irreparably tainted. Frank Fina and E. Marc Costanzo subverted the power of the investigative grand jury to conceal their own crimes and to preserve their own jobs and reputations. This runs contrary to the most essential safeguards underlying the grand jury process.

One of the most basic and important functions of the grand jury "is to stand between the government and the citizen and thus to protect the latter from harassment and unfounded

---

[5] Specifically, the order directed all employees of the Office of Attorney General to "refrain from engaging in, or soliciting, any act of obstruction, intimidation or retaliation against any witness summoned by the Grand Jury in the Special Prosecutor's Investigation." (Exhibit B, at ¶ 2.)

The protective order was subsequently modified on September 17, 2014 and October 30, 2014, but the above-referenced portion of the order remains in effect.

prosecution." United States v. Dionisio, 410 U.S. 19, 45 (1973) (Marshall, J., dissenting). The grand jury maintains this "insulating" function even when acting "in its investigative capacity." Id.

As Chief Justice Warren wrote of the grand jury in Wood v. Georgia, 370 U.S. 375, 390 (1962):

> Historically, this body has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will.

In this case, the power of the investigating grand jury has been corrupted to serve the criminal ends – the "personal ill will" – of Frank Fina and E. Marc Costanzo. Faced with personal and professional ruin, they acted in desperation to avoid the public disgrace that they richly deserve. They were the individuals that instigated this investigation. They did so to further their own unlawful agenda. The power of the grand jury, instead of acting as a "shield to the innocent," was in this case misused to protect two peddlers of depravity from public exposure.

Fina and Costanzo's misuse of the grand jury is exacerbated by the fact that they knew that no unlawful act could have been committed by Attorney General Kane, as a matter of law, as she was never sworn before the 2009 grand jury. She could not have committed any unlawful act of disclosure; she had no "capacity to commit a crime" under 42 Pa.C.S. § 4549(b). See Castellani, 598 Pa. at 307.

The fact that Fina and Costanzo subsequently offered materially misleading testimony tin connection with the grand jury proceedings should be sufficient in itself to justify quashing

10

submission initiating the investigation. Their sworn testimony on August 25, 2015 unquestionably contained material omissions. The emails in question were not "personal" and "private" emails that were "authorized" or "permitted" by the Office of Attorney General. They were vehicles for transmitting criminal obscenity from state-owned computers. See In re: Mr. Justice Seamus P. McCaffery of the Supreme Court of Pennsylvania, No. 430, Judicial Administration Docket (Concurring Statement), at 1 (discussing "sexually explicit pornographic emails" which are "clearly obscene and may violate the Crimes Code Section on Obscenity[.]"). Under Pennsylvania law, this constitutes at the least false swearing under 18 Pa.C.S. § 4903.

Fina and Costanzo initiated the grand jury investigation in this case. Based on their willingness to mislead the court about their own wrongdoing, there can be no confidence in the truth or completeness of any sworn statement they made in doing so.

The machinations of Frank Fina and E. Marc Costanzo must not be rewarded. We respectfully submit that the submission initiating this grand jury and the subpoena to Attorney General Kane must be quashed.

## POINT TWO

The Protective Order Should be Vacated Because Attorney General Kane is Being Unlawfully Prevented from Performing Her Duties

The protective order issued in connection with this investigation must also be vacated in order to avoid a Constitutional Separation of Powers violation.[6] Attorney General Kane is the chief law enforcement officer for the Commonwealth of Pennsylvania. She is charged with

---

[6] The protective order is also the subject of a Petition for Review filed by the Office of Attorney General on November 10, 2014. See Pennsylvania Office of Attorney General v. Supervising Judge of the Thirty-Fifth Statewide Investigating Grand Jury, No – MM 2014, dated November 10, 2014.

11

investigating and prosecuting criminal acts that fall within her purview. She was elected to carry out that duty. She has an unconditional obligation to protect the citizens of this state from criminality, particularly when the offenders at issue are public servants abusing their office. The corrupt machinations of Frank Fina and E. Marc Costanzo have wrongfully caused the judiciary to bar her from discharging the duties of her Office.

The protective order prevents Attorney General Kane from exposing the truth about Fina and Costanzo to the citizens of Pennsylvania, and seeing them removed from their positions as Assistant District Attorneys. Based on the emails they received, possessed, viewed and distributed on their state-owned computers, they should be investigated and possibly prosecuted. Under the terms of the protective order, it is currently impossible for the Office of Attorney General to carry out this responsibility.

The protective order also prevents Attorney General Kane from investigating leaks associated with this grand jury proceeding. There have been multiple news reports containing information about this grand jury proceeding, meaning that someone involved in the investigation is unlawfully providing information to the press. (See Exhibit C.) The Office of Attorney General cannot investigate these leaks – as it is charged with doing – because its investigation may be perceived as running afoul of the overbroad protective order.

Finally, the protective order prohibits Attorney General Kane from investigating any crimes that may have occurred in connection with the grand jury proceedings themselves. This includes, but is not limited to, the materially misleading testimony provided by Fina and Costanzo on August 25, 2014.

Under the terms of this protective order, Attorney General Kane and the Office of Attorney General cannot perform their law enforcement duties. The restriction on Attorney

12

General Kane's power to investigate and prosecute is the product of judicial action. The ultimate result is a violation of the Separation of Powers Doctrine of the federal and state constitutions. The protective order must therefore be vacated.

### Other Grounds for Relief

The submission initiating the grand jury investigation and the subpoena should also be quashed, and the protective order vacated, because this investigation has been tainted throughout by leaks aimed at discrediting Attorney General Kane. On multiple occasions, information relevant to the grand jury proceedings have been leaked in a form designed to slander Attorney General Kane's reputation, and the reputation of the Office of Attorney General. (See Exhibit C, collected news reports.) The failure to maintain the integrity of the grand jury proceedings in this case is sufficiently serious and wide-spread that quashing the submission and the subpoena and vacating the protective order is warranted.[7]

### CONCLUSION

For the reasons set forth above, we respectfully submit that: (I) the submission initiating the grand jury investigation and the subpoena to Attorney General Kane should be quashed; and (II) the protective order should be vacated, under Pa.R.A.P. 3309, 42 Pa.C.S. § 726 and Kings Bench Power. This is clearly "an issue of immediate public importance," and we respectfully request that this Court "cause right and justice to be done." See 42 Pa.C.S. § 726.

---

[7]     The extensive leaks in this case likely constitute the criminal offense of harassment, intimidation or retaliation against a prosecutor under 18 Pa.C.S. § 4953, as well as obstructing administration of law or other governmental function under 18 Pa. C.S. § 5101.

Dated: November 12, 2014

Minora, Minora, Colbassani,
Krowiak, Mattioli & Munley

*Amil Minora /RMK*

Amil M. Minora, Esq.
Attorney for Attorney General Kathleen G. Kane
Attorney ID: 22703
700 Vine Street
Scranton, PA 18510
(570) 961-1616

Winston & Strawn, LLP

*Gerald Shargel /RMK*

Gerald L. Shargel, Esq.
Attorney *Pro Hac Vice* for Attorney General
Kathleen G. Kane
200 Park Avenue
New York, NY 10166
(212) 294-2637

14

**EXHIBIT NOT REPRODUCED DIGITALLY Available in Prothonotary's Office**

# EXHIBIT A

**(emails and images 398 pages)**

# EXHIBIT B

## IN THE COURT OF COMMON PLEAS
## MONTGOMERY COUNTY, PENNSYLVANIA

IN RE:

THE THIRTY-FIVE STATEWIDE

INVESTIGATING GRAND JURY

: SUPREME COURT OF PENNSYLVANIA
: NO. 176 M.D. MISC DKT. 2012
:
: MONTGOMERY COUNTY COMMON PLEAS
: M.D. 1424-2014
:
: NOTICE NO. 123

## ORDER

AND NOW, this 27th day of August, 2014, it is hereby ORDERED, pursuant to

18 Pa.C.S.§ 4954 (relating to protective orders), that:

1. The Office of the Attorney General, except upon specific authorization by

this Court or the Special Prosecutor, shall refrain from any involvement in,

or access to, the investigative efforts of the Special Prosecutor.

2. Employees of the Office of the Attorney General shall refrain from

engaging in, or soliciting, <u>any</u> act of obstruction, intimidation or retaliation

against any witness summoned by the Grand Jury in the Special

Prosecutor's investigation.

3. All transcripts of Grand Jury testimony shall be given only from the

stenographer or their employer directly to the Supervising Judge and the

Special Prosecutor, no copy shall be given to the Attorney General's

Office.

4. Employees of the Office of the Attorney General shall not have access to transcripts of proceedings before the Grand Jury or Supervising Judge, exhibits, or other information pertaining to the Special Prosecutor's investigation. All information related to the work of the Special Prosecutor shall be kept in the custody of the Special Prosecutor and Supervising Judge.

5. Any person, including employees of the Office of the Attorney General, who engage in any act of obstruction, intimidation or retaliation against a witness summoned by the Grand Jury in the Special Prosecutor's investigation may be prosecuted as set forth in 18 Pa.C.S.§ 4955 (relating to violation of orders) and any other applicable provisions of the Crimes Code of Pennsylvania.

6. The Special Prosecutor shall serve a copy of this Order upon the Office of the Attorney General.

7. The contents of this Order are sealed, and shall not be disclosed (either verbally or in writing) by the Office of the Attorney General to any individual outside of the Office of the Attorney General under penalty of contempt of court.

BY THE COURT:

_____
WILLIAM R. CARPENTER,     J.
Supervising Judge

Copies sent on August 27, 2014
By First Class Mail to:
Kathleen G. Kane, Pennsylvania Attorney General
Thomas E. Carluccio, Esquire

# EXHIBIT C



52° John Boland' Forecast • Philadelphia, PA

philly●com

Member Login: Sign In | Register  f  t  &

Search          Submit

🏠 | News | Sports | Entertainment | Business | Opinion | Food | Lifestyle | Health | More

BREAKING  NEWS VIDEO  VOICES/BLOGS  PHILADELPHIA  NEW JERSEY  POLITICS  EDUCATION  OPINION  OBITUARIES  NATION/WORLD  WEATHER  TRAFFIC
LOTTERY

# State A.G. probed Philly NAACP leader Mondesire's finances 5 years ago

Share    Tweet •    Reddit    Email





*J. Wyatt Mondesire, former President of the Philadelphia Chapter of the NAACP on August 10, 2009. (David Maialetti / Staff Photographer)*



**CHRIS BRENNAN,** *Daily News Staff Writer brennac@phillynews.com, 215-854-5973*

LAST UPDATED: Thursday, June 5, 2014, 9:45 PM

STATE ATTORNEY General Kathleen Kane is reviewing a 2009 grand-jury investigation of J. Wyatt Mondesire, former head of the NAACP in Philadelphia, and one of his employees, according to documents obtained by the *Daily News.*

Mondesire's employee, Harriet Garrett, and her daughter pleaded guilty in 2010 to stealing nearly $220,000 in state grant money for a job-training program. Garrett was sentenced to a minimum of six months in jail and ordered to pay restitution. Her daughter got 18 months' probation.

A 2009 memo written by then-Deputy Attorney General William Davis Jr. says investigators "uncovered what appeared to be questionable spending" of state money by Mondesire.

Kane, a Democrat, is now trying to determine what happened with the Mondesire investigation. Gov. Corbett, a Republican, was the attorney general at the time.

MORE COVERAGE
Police probe shooting at upper Merion complex
Christie chief of staff subpoenaed

*Latest News Video*



Rev. Darrell... Walk Tightrope at Widener

More videos:



*Most Viewed News Stories:*


Bouncers shoot man at Phila. strip club


Teen pulls Philly cop from burning car


Another teacher assaulted at Bartram


Kane's car crash derailed testimony again


US bishops struggling to adapt to pope

Exhibit C 001

*Travel Deals*





$249 & up -- Ends 11/16:
Caribbean Cruise Sale
w/Upgrades
See all travel deals »

LISTED BY **TRAVELZOO**
*Some taxes, fees additional*

*Weekly Circulars*



BUY TWO:
TARGET USA!
Buy Two, Get One Free
All Video Games
THIS WEEK ONLY

 

STAPLES:
Make More Happen For
Less
THIS WEEK ONLY

See More Circulars »

Mondesire, 64, says he was never questioned and denies any financial wrongdoing.

The 2009 Davis memo detailed for his bosses what had been uncovered about Mondesire and Garrett, who worked at the *Philadelphia Sunday Sun*, a weekly newspaper Mondesire publishes.

A nonprofit called Next Generation Community Development Corp., which is operated by Mondesire, held a state-government grant for a jobs-training program in 2004 and 2005, but handed it off to Garrett, who ran another nonprofit called Creative Urban Education Systems, or CUES, according to the Davis memo.

Mondesire was listed as chairman of the CUES board, the memo noted, while Garrett served as the treasurer for Next Generation's board.

Davis wrote his memo to then-Chief Deputy Attorney General Frank Fina and then-Senior Deputy Attorney General E. Marc Costanzo.

Corbett, as attorney general, named Fina in 2006 to head a new public-corruption unit and Costanzo to work on cases for the unit in the Philadelphia region.

Fina and Costanzo now work in a similar unit for District Attorney Seth Williams.

In the memo, Davis wrote:

* Next Generation's bank-account records, obtained with a grand-jury subpoena, showed deposits of $1.3 million in government grants in a one-year period.

Another $521,000 in the account came from political campaigns, rent payments and the intermingling of money from the *Sunday Sun*, which is owned and operated by Mondesire, the memo said.

* Next Generation paid $2,273 to the Philadelphia Club, a private and exclusive club in Center City.

* Next Generation spent "tens of thousands," writing checks to pay Mondesire's American Express bill for "clothes, food, lodging gas and entertainment" and a loan from Mellon Bank. There were also checks written to Mondesire and to "cash."

* Next Generation wrote checks for $169,960 to Charles and Claudia Tasco and their company, C&C Construction. (Charles Tasco is the son of City Councilwoman Marian Tasco, a friend and political ally of Mondesire's for more than three decades.)

* $6,431 in CUES money was given to Mondesire for what Garrett called consulting. That type of expense was not allowed, according to the rules of the grant.

* In "various correspondence" between Garrett and Mondesire discovered by investigators, she questioned payments of more than $70,000 he made to Claudia Tasco.

* CUES paid $1,099 for health insurance for Mondesire.

* Davis wanted to question Mondesire - and possibly subpoena him for sworn grand-jury testimony - about Garrett, CUES and Next Generation.



*Also on Philly.com*

BUSINESS:
 GM ordered switches nearly 2 months before recall

HEALTH:
 The 5 best exercises for runners

SPORTS:
 Sanchez has chance to be great

ENTERTAINMENT:
 Stephen A. Smith to broadcast from UPenn

FOOD:
 Rockhill: Pizza and steaks return to a Cherry Hill landmark

JOBS:
 How should I manage my workload while I'm on vacation?

*Stay Connected*

Got the latest Philly.com Daily Headlines newsletter delivered to your email. Sign up now!

*Enter email address to sign up

Already a philly.com member?  ○ Yes  ○ No



A DAILY NEWS ORIGINAL  **DAILY NEWS**

FOR THE COMPLETE DAILY NEWS EXPERIENCE,

JOIN OR LOGIN NOW >

Exhibit C 002

**Never questioned**

Mondesire, a former *Inquirer* reporter who served as the top aide to the late U.S. Rep. Bill Gray, said no one from the A.G.'s Office ever questioned him.

"We didn't use any money for personal gain," Mondesire said.

He said that he has not seen the A.G. Office's documents and twice declined an offer from the *Daily News* to review them.

Mondesire said C&C Construction worked on four properties, including the NAACP headquarters and his newspaper office, where the Next Generation non-profit is also located.

"We bought supplies with my American Express card for construction," he said.

"They never asked me a single question back in 2009. We rehabbed the buildings. We spent money buying stuff for the buildings, construction and paying off developers."

Garrett declined to comment about the investigations. Her daughter did not respond to requests for comment.

The May 2010 news release about Garrett's arrest featured Corbett laying out the charges.

Corbett did not respond this week to two questions: Was he briefed on the Mondesire investigation and did he play a role in deciding what happened with that probe?

Mondesire was suspended by the NAACP's national headquarters in April after he feuded publicly with board members about the finances of the local chapter and Next Generation.

Those board members - Sid Booker, Donald "Ducky" Birts and the Rev. Elisha Morris - also were suspended.

Booker and Morris, who say they are still Next Generation board members, are now asking a Common Pleas judge to force Mondesire to show them the nonprofit's financial records.

As a judge considers that request, Kane's staff is reviewing what became of the 2009 Mondesire probe.

David Peifer, who heads the A.G.'s Bureau of Special Investigations, on March 21 interviewed Michael Miletto, the special agent who investigated Garrett and Mondesire.

The *Daily News* obtained a transcript of that taped interview.

Miletto told Peifer that he subpoenaed Next Generation's bank account, the transcript shows.

"When I did that, I found that there was a whole bunch of money that appeared to me to be donations to the NAACP, not [Mondesire], and they were going into Next Generation's account and they were being used for [Mondesire's] lifestyle - much of it," Miletto told Peifer.

Miletto said he was taken off the case after Fina and Costanzo were told about the probe, according to the transcript.

Exhibit C 003

Miletto said "criminal activity was just ignored" after that. He added that two accountants who had worked for Mondesire had provided taped statements, with one asking for immunity and the other asking for protection.

Fina and Costanzo declined to comment about the Mondesire investigation, citing the secrecy of grand-jury proceedings.

Devis, now in private practice, also declined to comment, citing the same restriction.

Miletto, who still works for the A.G.'s office, also declined to comment.

Peifer referred questions to Kane's communications staff.

J.J. Abbott, a spokesman for Kane, declined to comment.


### The Kane-Fina feud

Fina and Costanzo have a complicated and controversial relationship with Kane.

Kane criticized Corbett's tenure as attorney general when she ran for office in 2012, specifically targeting the Penn State child-abuse scandal that sent former assistant football coach Jerry Sandusky to prison.

Kane's staff is now conducting an extensive review of that investigation.

Fina led the Sandusky probe.

Kane, on Feb. 5, issued a statement noting that her office's Sandusky review had been underway for one year, adding that delays in the undertaking "will be described in more detail when the report is made public."

A month later, the *Inquirer* reported that Kane declined to pursue an investigation previously led by Fina and Costanzo, starting in 2010, that used Philadelphia lobbyist Tyron Ali as a confidential informant to tape conversations with four Philly state representatives and a former Traffic Court judge. On the tapes, the representatives and judge accept cash or gifts from Ali.

Kane has said Fina dropped 2,033 criminal counts against Ali, who had been charged with stealing $430,000 from a state program, 24 days before she was sworn into office.

She said that "extraordinarily lenient" deal "crippled the chance of this case succeeding in prosecution."

Fina, in a letter published by the *Inquirer* a week after the first story ran, called on Kane to explain her decision.

The *Inquirer* also published a letter that day from Fina's boss, Williams, critical of Kane.

Kane eventually turned over the Ali case file to Williams, who is now examining whether charges can be brought against the four representatives and the Traffic Court judge, who is currently on trial in an unrelated federal corruption case.

Exhibit C 004

On Twitter: @ChrisBrennanDN

Blog: ph.ly/PhillyClout.com

**CHRIS BRENNAN**
*Daily News Staff Writer brennac@phillynews.com,*
*215-854-5973*

Exhibit C 005

Member Login: Sign In | Register  f  t  8



55° John Bolaris' Forecast »
Philadelphia, PA

philly●com

Search          Subm

**🏠 | News | Sports | Entertainment | Business | Opinion | Food | Lifestyle | Health | More**

BREAKING  NEWS VIDEO  VOICES/BLOGS  PHILADELPHIA NEWS  NEW JERSEY  POLITICS  EDUCATION  OBITUARIES  NATION/WORLD  WEATHER  TRAFFIC
LOTTERY

America's Favorite Brand'

# Special prosecutor probes Pa. Attorney General's Office

Advertisement

Share    Tweet    Reddit    Email



*Pa. Attorney General Kathleen G. Kane faces questions over how her office handled secret records. A special prosecutor has issued subpoenas to her office, others. MICHAEL BRYANT / Staff Photographer, file*



Here are 25 of the most gorgeous cheerleaders on NFL sidelines.

Shop Brilliant Earth's beyond conflict free diamond rings, antique rings, and fine jewelry!

Top 10 Richest Women in The World

If you owe less than $625,000 on your home, use the President's Refi Program to save up to $3,000/Yr

The 40 MPG Cars of 2014

29 of The Most Well Endowed In Hollywood!

**Craig R. McCoy and Angela Couloumbis, *Inquirer Staff Writers***
LAST UPDATED: Sunday, August 31, 2014, 1:06 AM

 A special prosecutor is investigating whether the office of Pennsylvania Attorney General Kathleen G. Kane leaked confidential grand jury material to a newspaper in a bid to strike back at former prosecutors in the office who had been critical of her, according to several people familiar with the matter.

The special prosecutor has issued several subpoenas to Kane's office and others to explore how secret records became public this year about a 2009 investigation by the Attorney General's Office involving Philadelphia political activist J. Whyatt Mondesire, the sources said.

Though there have been periodic inquiries into grand jury leaks in the past, this appears to be first time the state attorney general or top staffers in the office have come under scrutiny.

*Latest News Video*



More videos:

*Most Viewed News Stories:*

Exhibit C 006



MORE THAN 50,000 DIFFERENT MOVIES AND SHOWS.

*Travel Deals*



$249 & up --Ends 11/16:
Caribbean Cruise Sale
w/Upgrades
See all travel deals »

LISTED BY TRAVELZOO
Some taxes, fees additional

*Weekly Circulars*



BUY TWO

TARGET USA:
Buy Two, Get One Free
All Video Games
THIS WEEK ONLY



STAPLES:
Make More Happen For
Less

Reached for comment late Saturday afternoon about reports of the leak probe, J.J. Abbott, a Kane spokesman, referred those questions to Renee Martin, Kane's acting communications director. Martin did not return phone calls.

It is unclear who commissioned the investigation, nor was The Inquirer able to determine the special prosector's name. But typically, sources said, such a decision would need approval from the Pennsylvania Supreme Court.

A person who violates grand jury secrecy rules may be found guilty of contempt of court and sentenced to up to six months in prison.

The leak inquiry was prompted by a Philadelphia Daily News article in June that drew heavily upon a 2009 internal memo prepared as part of a grand jury investigation that summarized the status of the Mondesire probe.

The newspaper story questioned whether top prosecutors in the office at the time, including then-Chief Deputy Attorney General Frank G. Fina, had pursued the Mondesire probe aggressively.

Over the last year, Kane, a Democrat, has been locked in an increasingly bruising battle with Fina and other former prosecutors and investigators who worked under her Republican predecessors over how certain high-profile cases were handled.

Critics have faulted Kane for her decision to shut down a sting launched by Fina that sources and investigative documents say captured five Philadelphia Democratic officials taking cash payments or gifts.

The Daily News article based on the leak seemed to suggest Fina and other former state prosecutors had fallen short in pursuing a case against Mondesire.

Fina did not return telephone calls seeking comment for this article. In a previous interview, he adamantly denied any suggestion that he did not aggressively pursue the Mondesire investigation, as has the lead prosecutor who was assigned to that probe.

No charges were filed in that case. Mondesire, a longtime leader of the NAACP in Philadelphia, has denied any wrongdoing.

In a twist, the special prosecutor's leak investigation has intersected with a separate and seemingly unrelated legal fight involving many of the same combatants in another matter: the exchange of sexually explicit e-mails among former and current state officials.

The messages, shared on state computers and sometimes through government e-mail accounts, are said to have contained pornographic images, jokes, cartoons, and other private messages, according to people familiar with them.

 Bouncers shoot man at Phila. strip club

 Kane's car crash derailed testimony again

 US bishops struggling to adapt to pope

 Merchants say cigarette tax is a business-killer

 Pa. official's complicated life as a lesbian

*Also on Philly.com*

BUSINESS:

 GM ordered switches nearly 2 months before recall

HEALTH:

 The 5 best exercises for runners

SPORTS:

 Sanchez has chance to be great

ENTERTAINMENT:

Stephen A. Smith to broadcast from UPenn

FOOD:

Exhibit C 007

Special prosecutor probes Pa. Attorney General's Office          Page 3 of 5

THIS WEEK ONLY
............
See More Circulars »
............

Not all the recipients are known. By some accounts, some of the material was circulated among scores of officials, from homicide investigators in the Attorney General's Office to state prosecutors and other state officials, including top Pennsylvania jurists.

The Inquirer and other news organizations have filed Right-to-Know requests with the Attorney General's Office seeking information about those e-mails, but a judge has blocked the office from deciding whether they can be released.

The e-mails have become an issue in connection with the leak inquiry, with some Kane critics arguing that Kane's office is using the threat of their release as a way to silence criticism, sources told The Inquirer.

In an article published Saturday, the Pittsburgh Tribune-Review reported that the Attorney General's Office, in response to that newspaper's Right-to-Know request, had said a judicial stay barred the office from saying whether it could release the e-mails.

Martin, Kane's chief spokeswoman, told the Pittsburgh newspaper she could not reveal the name of the judge or the court that issued the stay.

That a judge has issued a temporary stay suggests that legal fight is ongoing.

The leak investigation by the special prosecutor was launched after a June 6 article in the Daily News that Kane was reviewing a 2009 grand jury investigation into the finances of Mondesire, former head of the NAACP Philadelphia chapter, and of one of his employees.

The article cited a 2009 memo written by then-Deputy Attorney General William Davis Jr. to Fina and then-Senior Deputy Attorney General E. Marc Costanzo. Among other things, the memo said investigators had "uncovered what appeared to be questionable spending of state money by Mondesire." The article also listed examples of the alleged questionable spending Davis had included in the memo.

The Daily News article said Kane wanted to find out what happened with the investigation. Mondesire said state prosecutors never interviewed him.

In an interview with The Inquirer this summer, Davis said it was false to suggest Fina had impeded the probe.

The Daily News article reported that a top Kane aide had in March interviewed an investigator with the Attorney General's Office who had worked on the Mondesire case. The Daily News obtained a tape of that interview. In it, the paper reported, the investigator said he had been taken off the case after he told Fina and Costanzo about his work.

Davis, in the interview with The Inquirer, said that the agent in question had been replaced and that the probe had continued. "It wasn't dropped," Davis said.



make over a South St. bar

JOBS:



How should I manage my workload while I'm on vacation?

*Stay Connected*

Get the latest Philly.com Daily Headlines newsletter delivered to your email. Sign up now!

Enter email address to sign up

Already a philly.com member?  ○ Yes   ○ No



AN INQUIRER ORIGINAL | The Inquirer

DISCOVER THE IMPROVED INQUIRER   MORE YOU

LEARN MORE

Exhibit C 008

For Fina and other former prosecutors and investigators in the Attorney General's Office, and for Kane and her top command, the quarrel over the alleged grand jury leaks, the handling of the Mondesire case, and the sexually explicit e-mails is the latest skirmish in a war that dates to Kane's 2012 bid for office.

In that race, Kane sharply criticized Fina's leadership of the investigation into serial child sex abuser Jerry Sandusky. She suggested political consideration delayed the probe into the former assistant football coach at Pennsylvania State University.

She also hired a former federal prosecutor to reinvestigate the Sandusky case. In a recent report, that ex-prosecutor said he found no evidence the probe had been delayed for political reasons but said the investigation might have moved more quickly.

In her first months in office, Kane also secretly shut down a probe Fina began that sources and investigative documents say caught five elected officials, all Philadelphia Democrats, on tape taking cash, money orders, or, in one case, a $2,000 bracelet.

After The Inquirer this year revealed Kane's decision to end the sting, she said the investigation had been carried out poorly and was possibly tainted by racial targeting. All five caught on tape are African American.

Fina vigorously defended the investigation. His current boss, Philadelphia District Attorney Seth Williams, has taken on the case.

In recent years, judges have approved a series of probes to get to the bottom of leaks, such as information that became public in news stories about the separate investigations into former casino operator Louis DeNaples and Sandusky.

Judge Barry Feudale jailed a former investigator with the Attorney General's Office for leaks related to an investigation into prison conditions in Lackawanna County.

Feudale jailed him for the maximum time permitted at the time for that form of contempt of court, 15 days. After Feudale complained vigorously that such a penalty was too mild, the possible maximum was increased to its current six months.

acouloumbis@phillynews.com

717-787-5934 @

@Angelaslnk

**Craig R. McCoy and Angela Couloumbis**
*Inquirer Staff Writers*

Exhibit C 009



Home | News | Sports | Entertainment | Business | Food | Lifestyle | Health | Marketplace

Collections • Prosecutor

# Special prosecutor probes Pa. Attorney General's Office

15　　2　　0　　@

Tweet　　8+1



zulily

up to
70% OFF
COATS
❯

By Craig R. McCoy and Angela Couloumbis, Inquirer Staff
Writers

POSTED: September 01, 2014

A special prosecutor is investigating whether the office of
Pennsylvania Attorney General Kathleen G. Kane leaked confidential
grand jury material to a newspaper in a bid to strike back at former
prosecutors in the office who had been critical of her, according to
several people familiar with the matter.

The special prosecutor has issued several subpoenas to Kane's office
and others to explore how secret records became public this year
about a 2009 investigation by the Attorney General's Office involving
Philadelphia political activist J. Whyatt Mondesire, the sources said.

Though there have been periodic inquiries into grand jury leaks in the
past, this appears to be first time the state attorney general or top
staffers in the office have come under scrutiny.

Reached for comment late Saturday afternoon about reports of the
leak probe, J.J. Abbott, a Kane spokesman, referred those questions
to Renee Martin, Kane's acting communications director. Martin did
not return phone calls.

It is unclear who commissioned the investigation, nor was The Inquirer
able to determine the special prosector's name. But typically, sources
said, such a decision would need approval from the Pennsylvania
Supreme Court.

A person who violates grand jury secrecy rules may be found guilty of
contempt of court and sentenced to up to six months in prison.

The leak inquiry was prompted by a Philadelphia Daily News article in
June that drew heavily upon a 2009 internal memo prepared as part of
a grand jury investigation that summarized the status of the Mondesire
probe.

The newspaper story questioned whether top prosecutors in the office
at the time, including then-Chief Deputy Attorney General Frank G.
Fina, had pursued the Mondesire probe aggressively.

Over the last year, Kane, a Democrat, has been locked in an
increasingly bruising battle with Fina and other former prosecutors and
investigators who worked under her Republican predecessors over how
certain high-profile cases were handled.

Critics have faulted Kane for her decision to shut down a sting
launched by Fina that sources and investigative documents say
captured five Philadelphia Democratic officials taking cash payments
or gifts.

The Daily News article based on the leak seemed to suggest Fina and
other former state prosecutors had fallen short in pursuing a case
against Mondesire.

Fina did not return telephone calls seeking comment for this article. In
a previous interview, he adamantly denied any suggestion that he did
not aggressively pursue the Mondesire investigation, as has the lead
prosecutor who was assigned to that probe.

No charges were filed in that case. Mondesire, a longtime leader of the
NAACP in Philadelphia, has denied any wrongdoing.

In a twist, the special prosecutor's leak investigation has intersected
with a separate and seemingly unrelated legal fight involving many of
the same combatants in another matter: the exchange of sexually
explicit e-mails among former and current state officials.

The messages, shared on state computers and sometimes through

### We Recommend

**Kane to decide whether to release state
workers' racy e-mails**
September 21, 2014

**Montco lawyer leading inquiry into
whether Kane's office leaked grand jury
information**
September 4, 2014

**State A.G. probed Philly NAACP leader
Mondesire's finances 5 years ago**
June 8, 2014

**AG Kane reveals X-rated emails**
September 26, 2014

### Find More Stories About

Prosecutor

Special Prosecutor

Attorney General

Exhibit C 010

government e-mail accounts, are said to have contained pornographic images, jokes, cartoons, and other private messages, according to people familiar with them.

Not all the recipients are known. By some accounts, some of the material was circulated among scores of officials, from homicide investigators in the Attorney General's Office to state prosecutors and other state officials, including top Pennsylvania jurists.

The Inquirer and other news organizations have filed Right-to-Know requests with the Attorney General's Office seeking information about those e-mails, but a judge has blocked the office from deciding whether they can be released.

The e-mails have become an issue in connection with the leak inquiry, with some Kane critics arguing that Kane's office is using the threat of their release as a way to silence criticism, sources told The Inquirer.

Order more online

Food · Booze · Groceries · Laundry

delivery.com

FAST, FREE DELIVERY　ORDER NOW

In an article published Saturday, the Pittsburgh Tribune-Review reported that the Attorney General's Office, in response to that newspaper's Right-to-Know request, had said a judicial stay barred the office from saying whether it could release the e-mails.

Marlin, Kane's chief spokeswoman, told the Pittsburgh newspaper she could not reveal the name of the judge or the court that issued the stay.

That a judge has issued a temporary stay suggests that legal fight is ongoing.

The leak investigation by the special prosecutor was launched after a June 6 article in the Daily News that Kane was reviewing a 2009 grand jury investigation into the finances of Mondesire, former head of the NAACP Philadelphia chapter, and of one of his employees.

The article cited a 2009 memo written by then-Deputy Attorney General William Davis Jr. to Fina and then-Senior Deputy Attorney General E. Marc Costanzo. Among other things, the memo said investigators had "uncovered what appeared to be questionable spending of state money by Mondesire." The article also listed examples of the alleged questionable spending Davis had included in the memo.

The Daily News article said Kane wanted to find out what happened with the investigation. Mondesire said state prosecutors never interviewed him.

In an interview with The Inquirer this summer, Davis said it was false to suggest Fina had impeded the probe.

The Daily News article reported that a top Kane aide had in March interviewed an investigator with the Attorney General's Office who had worked on the Mondesire case. The Daily News obtained a tape of that interview. In it, the paper reported, the investigator said he had been taken off the case after he told Fina and Costanzo about his work.

Davis, in the interview with The Inquirer, said that the agent in question had been replaced and that the probe had continued. "It wasn't dropped," Davis said.

For Fina and other former prosecutors and investigators in the Attorney General's Office, and for Kane and her top command, the quarrel over the alleged grand jury leaks, the handling of the Mondesire case, and the sexually explicit e-mails is the latest skirmish in a war that dates to Kane's 2012 bid for office.

In that race, Kane sharply criticized Fina's leadership of the investigation into serial child sex abuser Jerry Sandusky. She suggested political consideration delayed the probe into the former assistant football coach at Pennsylvania State University.

She also hired a former federal prosecutor to reinvestigate the Sandusky case. In a recent report, that ex-prosecutor said he found no evidence the probe had been delayed for political reasons but said the investigation might have moved more quickly.

In her first months in office, Kane also secretly shut down a probe Fina began that sources and investigative documents say caught five elected officials, all Philadelphia Democrats, on tape taking cash, money orders, or, in one case, a $2,000 bracelet.

After The Inquirer this year revealed Kane's decision to end the sting, she said the investigation had been carried out poorly and was possibly tainted by racial targeting. All five caught on tape are African American.

Fina vigorously defended the investigation. His current boss, Philadelphia District Attorney Seth Williams, has taken on the case.

In recent years, judges have approved a series of probes to get to the bottom of leaks, such as information that became public in news stories about the separate investigations into former casino operator Louis DeNaples and Sandusky.

Judge Barry Feudale jailed a former investigator with the Attorney General's Office for leaks related to an investigation into prison conditions in Lackawanna County.

Feudale jailed him for the maximum time permitted at the time for that form of contempt of court, 15 days. After Feudale complained vigorously that such a penalty was too mild, the possible maximum was increased to its current six months.

acouloumbis@phillynews.com

717-787-5934

@Angelasink

**You May Like**　　　　　　　　　　　　　　　　　　　Sponsored Links by Taboola

**Please Don't Retire At 62. Here's Why.**
The Motley Fool

Exhibit C 011

AdChoices ▷

# NEWS + OPINION

NAVIGATION ▼

# Kane's Office the Target of Leak Probe

### Was secret info leaked in revenge for criticism?

BY JOEL MATHIS | SEPTEMBER 2, 2014 AT 6:01 AM



*AP Photo | Bradley C. Bower*

Exhibit C 012

**Kathleen Kane** has more trouble on her hands.

It's been a quiet few months for the controversial Pennsylvania attorney general, but an old scandal is coming back to haunt her anew. The *Inquirer* **reports** a special prosecutor is investigating whether her office leaked secret grand jury material to a newspaper — and did so to make at least one of Kane's high-profile critics look bad.



**What was leaked?** Secret records involving a 2009 investigation of then Philly NAACP leader **Jerry Mondesire, who has been suspended from that post by the national office** amid a steady stream of reporting about irregularities in his finances. No charges were brought from the A.G.'s investigation, and Mondesire has denied wrongdoing.

**Why was it leaked?** According to the *Inquirer*, a June *Daily News* story using the leak as a source questioned whether former **Chief Deputy Attorney General Frank Fina** had investigated Mondesire with enough vigor. Fina and Kane, of course, **have been at loggerheads over Kane's decision to abandon a sting operation** that recorded up to five Philly Democrats taking unreported cash gifts from a confidential informant. Fina now works for **Philadelphia D.A. Seth Williams.**

**So what happens if somebody is caught and convicted of leaking?** The Inky says, "A person who violates grand jury secrecy rules may be found guilty of contempt of court and sentenced to up to six months in prison."

**What's next?** Unsure. The *Inquirer* reports the "special prosecutor has issued several subpoenas to

Exhibit C 013

Kane's office and others" but no timeline for the investigation has been given.

**Read More About: Kathleen Kane**

« Previous Post

Next Post »

# RELATED ARTICLES

- **News: Former Traffic Judge Will Plead to Accepting Bracelet**
- **News: Abu-Jamal Sues to Overturn New Law**
- **News: Pa. Chief Justice to AG: Release All Judges' Emails**
- **News: More Email Trouble in Harrisburg?**
- **News: Top 10 Pa. Careers Damaged by the Sandusky Scandal**
- **News: UPDATE: Judge Faces Charges for Accepting Bracelet**

*Be respectful of our online community and contribute to an engaging conversation. We reserve the right to ban impersonators and remove comments that contain personal attacks, threats, or profanity, or are flat-out offensive. By posting here, you are permitting Philadelphia magazine and Metro Corp. to edit and republish your comment in all media.*

Exhibit C 014



# philly●com

# Montco lawyer leading inquiry into whether Kane's office leaked grand jury information



*Thomas E. Carluccio is a defense lawyer and Republican.*





2014 JEEP₊ CHEROKEE





**GALLERY:**
Thomas E.
Carluccio is a
defense
lawyer...

**By Angela Couloumbis and Craig R. McCoy, Inquirer Staff Writers**
POSTED: September 04, 2014

A veteran lawyer from Montgomery County is the special prosecutor heading the inquiry into whether state Attorney General Kathleen G. Kane's office leaked grand jury information in an effort to discredit her critics, The Inquirer has learned.

Thomas E. Carluccio, a criminal defense lawyer in Plymouth Meeting and former prosecutor in Delaware, was appointed over the summer by a Montgomery County judge to explore how secret records became public this year about a 2009 investigation by the Attorney General's Office involving Philadelphia political activist J. Whyatt Mondesire, according to several people familiar with the matter.

No charges were brought against Mondesire in the case. The investigation, details of which appeared in a June story in the Philadelphia Daily News, took place before Kane became attorney general.

Carluccio did not respond to messages left by phone and e-mail Tuesday. Renee Martin, Kane's acting director of communications, said the office would have no comment.

The Inquirer first reported news of the special prosecutor's appointment on Sunday. Sources said investigators in the inquiry have issued subpoenas to Kane's office and others.

Carluccio was appointed by Judge William Carpenter, the supervising grand jury judge in the eastern part of the state, the sources said. Both men are Republicans. Kane is a Democrat.

Though there have been past leak inquiries, this appears to be first

## We Recommend

Kane denies bid to release controversial e-mails
*September 25, 2014*

Kane to decide whether to release state workers' racy e-mails
*September 21, 2014*

Special prosecutor probes Pa. Attorney General's Office
*September 1, 2014*

District Attorney Williams blasts attorney general in sting case
*March 23, 2014*

## Find More Stories About

Special Prosecutor

Kane

Exhibit C 015

# Bronx Accident Lawyers

theattorneys.us

Expert. Experienced Since 1977 Free Consult. No Recovery-No Fee

time the state attorney general or top staffers in the office have come under scrutiny. Such an inquiry typically requires the approval of the chief justice of the Pennsylvania Supreme Court, according to a spokesman for the Administrative Office of Pennsylvania Courts.

A person who violates grand jury secrecy rules may be found guilty of contempt of court and sentenced to up to six months in prison.

Carluccio, 57, worked as a state deputy attorney general in Delaware before switching sides to work as a defense attorney in Pennsylvania. His wife, Carolyn Tornetta Carluccio, is a judge. A Republican, she joined Carpenter on the Montgomery County Common Pleas bench in 2010.

The leak to the Daily News involved a 2009 investigation by former Chief Deputy Attorney General Frank G. Fina and onetime Senior Deputy Attorney General E. Marc Costanzo. Fina, who handled the office's highest-profile criminal cases, left his position shortly after Kane took office.

**Heated battle**
Fina and Kane have been locked in a heated battle over the last two years on how certain cases were handled.

Kane, for instance, brought in a former federal prosecutor after she was elected to review Fina's prosecution of former Penn State football coach Jerry Sandusky on child sex-abuse charges.

During her campaign for office, Kane said the Sandusky probe might have been delayed for political reasons. The independent review found no evidence of that.

And for the last six months, Kane has faced criticism for shutting down a sting operation launched by Fina that sources and investigative documents say captured five Philadelphia Democrats, including four state legislators, on tape accepting money or gifts.

As criticism over the sting case mounted, the Philadelphia Daily News reported in early June that Kane was conducting a review of Fina's handling of a 2009 investigation into Mondesire's finances.

The newspaper's story discussed, among other things, a secret investigative memo summarizing the status of the Mondesire probe.

Mondesire, the former president of the Philadelphia NAACP, has denied any wrongdoing.

**Explicit e-mails**
The leak investigation has been complicated by a separate but intense legal fight over the exchange of sexually explicit e-mails among former and current state officials.

The e-mails have become an issue because some Kane critics argue that Kane's office is using the threat of their release as a way to silence criticism of her, sources have told The Inquirer.

The messages were discovered during Kane's review of the Sandusky investigation, which involved going through thousands of documents.

The Inquirer has reported that the e-mails were shared on state computers and sometimes through government e-mail accounts. They are said to have contained pornographic images, jokes, cartoons, and other private messages.

Though not all of the recipients are known, some of the material circulated among scores of officials, from homicide investigators in the Attorney General's Office to state prosecutors and other state officials, including top Pennsylvania jurists, The Inquirer has reported.

While Judge Carpenter in Montgomery County is overseeing the leak probe, a different judge, Norman A. Krumenacher 3d, of Cambria County, has jurisdiction over the e-mail issue.

Several news organizations, including The Inquirer, have put in right-to-know requests for the e-mails. But Krumenacher has ordered a stay on the release of the e-mails.

He oversees the grand jury in Western Pennsylvania as well as the legal issues involving Kane's review of the Sandusky prosecution. The e-mails in questions were unearthed by computer experts as part of that review.

acouloumbis@phillynews.com

717-767-5934 @AngelasInk



2014 JEEP, CHEROKEE

VIEW INCENTIVES

**You May Like**     Sponsored Links by Taboola

**Please Don't Retire At 62. Here's Why.**
The Motley Fool

**Princess Kate's Latest Appearance is Worrisome**
Stirring Daily

**Unbelievable: One-Third Of WrestleMania VI Competitors Now Dead**
ThePostGame

Exhibit C 016

· Monday, November 10, 2014

Member Login: Sign In | Register   f   t   &

52° John Colaris' Forecast »
Philadelphia, PA

**philly©com**

Search          Subm

ft | News | Sports | Entertainment | Business | Opinion | Food | Lifestyle | Health | More

BREAKING NEWS VIDEO  VOICES/BLOGS  PHILADELPHIA NEWS  NEW JERSEY  POLITICS  EDUCATION  OBITUARIES  NATION/WORLD  WEATHER  TRAFFIC
LOTTERY

What wine goes with

*venison?*

Click here to find out with our

**PAIRING GUIDE**

*Happier Holidays*
FINE WINE & GOOD SPIRITS

Close Ad X

# Sources: Porn scandal misses Kane's main target

Share   Tweet        Reddit |   Email   100 COMMENTS



*Pennsylvania Attorney General Kathleen Kane and (Staff, file/Michael Bryant and AP Photo/Bradley C Bower)*



GALLERY: Sources: Porn
scandal misses Kane's
main target

Craig R. McCoy and Angela Couloumbis, *Inquirer Staff Writers*
LAST UPDATED: Monday, October 13, 2014, 1:08 AM
POSTED: Monday, October 13, 2014, 12:06 AM

 HARRISBURG - Attorney General
Kathleen G. Kane's unprecedented move
to expose the swapping of pornographic e-mails on state time
has so far cost four men their jobs, put another at risk of being
stripped of his state post, and left three others deeply
embarrassed.

All of them may be collateral damage.

So far, Kane has not landed a major blow on the men who
sources say has long been her main target: former state
prosecutor Frank Fina.

In fact, she's been muzzled from doing so.

MORE COVERAGE
**Porn scandal risk to Corbett campaign?**

Advertisement


Here are 25 of the most
gorgeous cheerleaders on
NFL sidelines.


29 of The Most Well Endowed
In Hollywood!


Changing jobs or retiring? Get
a free guide to understand
your 401(k) options.


The 40 Sexiest And Most
Revealing Celebrity Selfies
And Twitter Pics of All Time!


Shop Brilliant Earth's beyond
conflict free diamond rings,
antique rings, and fine
jewelry!


Controversy over new skinny
pill – is it too strong for store
shelves?...

*Latest News Video*



More videos:

*Most Viewed News Stories:*

Exhibit C 017





$249 & up – Ends 11/16:
Caribbean Cruise Sale
w/Upgrades
See all travel deals »

LISTED BY TRAVELZOO
Some taxes, fees extra

*Weekly Circulars*



SPORTS AUTHORITY:
Take Advantage Of The
Winter Warmth Event!
THIS WEEK ONLY



TARGET USA:
Buy Two, Get One Free
All Video Games
THIS WEEK ONLY

See More Circulars »

The story behind the e-mails is far more tangled than what has become public: that eight men, all with ties to Fina, have been named by Kane as sending or receiving X-rated e-mails in a widening scandal that has also touched a state Supreme Court justice.

It involves a secret leak investigation, closed-door legal arguments, a protective order, and allegations of threats - all against a backdrop of a two-year battle between Kane and Fina that has become deeply personal, if not ugly.

Fina is a career prosecutor known for high-profile public-corruption cases at the Attorney General's Office. He now works for Philadelphia District Attorney Seth Williams.

Kane is the former assistant district attorney in Lackawanna County who emerged from political obscurity to become the first woman and Democrat elected as Pennsylvania's top prosecutor.

Both declined to comment for this story.

Numerous people with knowledge of their quarrel - including sources close to both - have said Fina participated in the exchange of X-rated e-mails.

According to the same sources, Kane was intent on making that fact public.

She wanted to expose what she believed was an entrenched misogynistic culture in the Attorney General's Office when Fina was a ranking prosecutor and before she took charge, people close to her say.

But in late summer, Fina obtained a ruling from a Montgomery County judge barring Kane from citing his name publicly in almost any fashion, according to several sources familiar with the ruling.

Judge William R. Carpenter, overseeing a grand jury in the eastern part of the state, granted the order after Fina argued to the judge that Kane's office was using the threat of tying him to the sexually explicit e-mails to intimidate and silence him and others, the sources said.

Fina cited an encounter in which he said a Kane aide had threatened his friend and former colleague Christopher Carusone, warning that if Fina kept criticizing Kane, "a lot people could get hurt," according to two people familiar with the allegation.

Sources close to Carusone say the aide, David Tyler, told him: "Tell your boy to stop" - words Carusone took as a threat against Fina.

Carusone and Tyler declined to comment for this article.

There is no dispute that the two men encountered each other in August in Harrisburg and discussed what was then the still publicly undisclosed cache of porn e-mails.

But a person close to Tyler rejected any suggestion he had threatened anyone. Instead, the source said, Tyler was trying to defuse tensions between the sides and complained that Fina had been exacerbating it by telling others the e-mails would implicate a wide circle of people.


Teen pulls Philly cop from burning car


Bouncers shoot man at Phila. strip club


Kane's car crash derailed testimony again


US bishops struggling to adapt to pope


Temple student shot outside frat party

*Also on Philly.com*

BUSINESS:

The 10 worst cars of all time

HEALTH:
The 5 best exercises for runners

SPORTS:

Sanchez has chance to be great

ENTERTAINMENT:

Stephen A. Smith to broadcast from UPenn

FOOD:

Rockhill: Pizza and steaks return to a Cherry Hill landmark

JOBS:
How should I manage my workload while I'm on vacation?

Exhibit C 018

Kane's allies have dismissed the allegation involving Tyler as false and an attempt by Fina to sully her as Carpenter, a Republican, presides over a grand jury investigation examining Kane and her aides.

The Inquirer has reported that Carpenter this summer appointed a special prosecutor, Montgomery County lawyer Thomas E. Carluccio, also a Republican, in a leak inquiry.

Carluccio is seeking to determine whether Kane's office improperly leaked grand jury material critical of Fina to the Philadelphia Daily News for a June story that raised questions about Fina's role in a case five years ago.

The leak inquiry carries high stakes: Any person who violates grand jury secrecy rules may be found guilty of contempt of court and sentenced to up to six months in prison.



Stay Connected

Get the latest Philly.com Daily Headlines newsletter delivered to your email. Sign up now!

Enter email address to sign up

Already a philly.com member? O Yes  O No



### Campaign criticism

Kane ignited the war in 2012, when she made a central theme of her campaign criticism of how Fina's team in the Attorney General's Office conducted the investigation into serial sex abuser Jerry Sandusky. She strongly suggested that Gov. Corbett - a Republican who as attorney general had been Fina's boss - ordered it slowed for political gain.

A review she later commissioned said Fina's team might have arrested Sandusky sooner, but found no evidence that politics played a role in the case.

Though the review failed to back up Kane's campaign rhetoric, it gave her a new and unexpected source of ammunition in the feud: Forensic computer work found that Fina, among dozens of others, had traded explicit photos and videos between 2008 and 2012 on state time on state computers.

The X-rated e-mails were among other messages that included jokes, cartoons, and political commentary. It was not illegal, but it was a violation of office policy.

The dispute between Kane and Fina escalated greatly in March when The Inquirer reported that Kane had secretly ended a sting investigation begun by Fina that sources said had caught five Philadelphia Democrats on tape accepting cash or gifts.

Kane called the sting "half-assed." Fina called her "embarrassing to law enforcement."

Throughout, Fina was publicly backed up in his defense of the Sandusky probe by old colleagues, including State Police Commissioner Frank Noonan, former top state prosecutor Richard Sheetz, and former agent Randy Feathers, the case's lead investigator.

All three later landed on the list of eight Kane named as having received pornographic e-mails while working in the Attorney General's Office under Corbett or other Republicans.

Also among them was Carusone, a prosecutor who, with Fina, was a key player in the Attorney General's Office's public corruption cases and who later became Corbett's secretary of legislative affairs.

Exhibit C 019

The others she named were E. Christopher Abruzzo, who became Corbett's environmental secretary; Glenn Parno, a top lawyer for Abruzzo; Patrick Blessington, a former member of Fina's anticorruption team who now works with him as a Philadelphia prosecutor; and Kevin Harley, Corbett's onetime spokesman in the Attorney General's Office and Governor's Office.

The fallout since that Sept. 25 bombshell has been pronounced.

Abruzzo and Parno resigned their government positions the week after the e-mail release. Sheetz stepped down as a prosecutor in Lancaster County. Corbett has asked Feathers to give up his position on the state parole board, a demand Feathers has thus far ignored.

Last week, Carusone lost his job with a major Philadelphia law firm, though neither he nor the firm would discuss why.

Carusone's attorney, Robert J. Donatoni of West Chester, said Carusone could not speak to reporters because he was "cooperating with the special prosecutor."

Donatoni would not elaborate but did say:

"In my view and that of others, Chris has the reputation of being a first-rate lawyer and has paid an enormous price for his cooperation. Chris is hopeful that the entire truth about what happened to him and his family will be revealed through the legal process."

Noonan, whom Corbett appointed to head the state police, has kept his job. The governor said there was no evidence Noonan opened the sexually explicit e-mails.

And last week, Supreme Court Justice Ronald Castille urged his colleagues to take action after seeing e-mails that indicate Justice Seamus McCaffery had sent sexually explicit images to an agent in the Attorney General's Office and to McCaffery's brother, a Philadelphia Common Pleas Court judge.

Name is leaked

At one point, it appeared the long-rumored e-mail scandal might pass without notice.

Late in the summer, Fina had asked another judge, Norman A. Krumenacker, to block any release on grounds that the material was covered by the grand jury secrecy of the Sandusky case, sources said. After days of deliberation, the judge rejected Fina's argument.

Despite the rulings by Krumenacker and Carpenter, Fina's name leaked out anyway in media accounts of those who had viewed the e-mails.

Still, Kane's office seemed uncertain whether she would release anything.

On Sept. 23, in fact, her office gave The Inquirer and other newspapers a legal opinion stating that the retrieved e-mails and the information about them the papers had asked to see were not public records and that Kane was not legally bound to release them.

Exhibit C 020

Two days later, Kane abruptly changed course and called in reporters to look at roughly 75 pornographic photos and videos.

The presentation lasted about 90 minutes.

In explaining why she singled out that group of eight for release, her office obliquely referred to constraints that blocked it from naming Fina.

"There are restrictions - upon which we cannot elaborate - which currently prohibit us from revealing the names of some other people who participated in this activity," a statement from her office read.

As many as 30 current prosecutors and agents also were in the porn e-mail loop, according to Kane's office. Her spokeswoman, Renee Martin, said that all faced discipline but that union contracts and state law mandated secrecy for those involved in disciplinary actions.

Summing up, Martin issued a statement saying the office was guided by certain basic principles of human relations management.

One such key, she said, was "respect for the reputations and privacy of current employees."

cmccoy@phillynews.com

215-854-4821 @CraigRMcCoy

Exhibit C 021

TRIB\...

Subscribe    Place Ad    Buy Trib Photos    Jobs    Homes    Search Autos    Classifieds    SportsTalk    Contests

# TRIBLIVE | News

Search

News

Columnists   Allegheny   Armstrong   Beaver   Butler   Fayette   Indiana   Somerset   Washington   Westmoreland   Health News   On the Grid
Education   Pennsylvania   Blogs   Contact Us

SEE WHAT OUR SUBSCRIBERS ARE BEAMING ABOUT    BIRCHBOX    [SUBSCRIBE]



◊ Larger text   ◊ Smaller text | Order Photo Reprints

# Judge blocks grand jury summons for Trib's Harrisburg correspondent

By Andrew Conte
Thursday, Oct. 16, 2014, 12:12 p.m.

The judge presiding over a statewide grand jury blocked an appearance Friday before the panel by Tribune-Review state Capitol correspondent Brad Bumsted, the newspaper's attorney said.

Judge William R. Carpenter, who is supervising the grand jury and whose signature appears on the subpoena issued Wednesday night, told the Trib he did not know about the subpoena until he talked with a reporter.

Carpenter declined to discuss the grand jury and referred questions to Chief Deputy Attorney General Laura A. Ditka, who issued the summons. She later informed the Trib's lawyer, Ron Barber, that Carpenter told her she was not authorized to subpoena Bumsted.

Carpenter returned a call to the Trib on Thursday and asked a reporter to read the subpoena to him.

Asked how the grand jury could issue a subpoena bearing his signature without his knowledge, Carpenter said, "That's what I'm going to try to figure out."

Ditka declined to comment, citing grand jury restrictions.

Barber said Pennsylvania's strong shield law protects reporters from having to testify about their sources. The Pennsylvania law, in effect since 1976, is based on a law adopted in 1937.

"The shield law in Pennsylvania is very broad and very powerful," Barber said.

By issuing the subpoena to Bumsted, the grand jury threatened to pull him into an increasingly ugly feud among prosecutors in the capital and Philadelphia.

Carpenter appointed a special prosecutor, Thomas Carluccio, to investigate allegations of information leaks from the office of Attorney General Kathleen Kane, The Philadelphia Inquirer has reported.

Caluccio could not be reached for comment. Kane's spokesman declined to comment, citing grand jury secrecy rules.

The grand jury investigation might be linked to reports about a 2009 case involving a Philadelphia political activist, who was not prosecuted, as well as the release of information about pornographic emails that circulated in the Attorney General's Office under Kane's predecessor, Gov. Tom Corbett.

Bumsted broke the story of the emails' existence in late August.

Former Chief Deputy Attorney General Frank Fina, who prosecuted high-profile corruption cases, asked a judge to block release of the racy emails. Fina heads a public corruption unit in the Philadelphia District Attorney's Office.

Pennsylvania is among 39 states with specific shield laws protecting journalists, said Gregg Leslie, legal defense director of the Reporters Committee for Freedom of the Press in Virginia. The federal government does not have a specific law protecting journalists.

Pennsylvania's law protects reporters from having to identify confidential sources or give up notes and story drafts, said Melissa Melewsky, media law counsel for the Pennsylvania NewsMedia Association.

"We have a really strong shield law in Pennsylvania, and it's been interpreted robustly by the courts, with regard to identifying confidential sources," Melewsky said. "As long as (Bumsted) promised confidentiality and has kept it, the law says he cannot be compelled to reveal the identity of his confidential sources."



Trib Total Media writer Brad Bumsted


Hungry for SPORTS?
TRIB SPORTSTALK
SPORTSTALK.TRIBLIVE.COM


Search for New and Used Cars from Local Dealerships in the Greater Pittsburgh Area
Shop Now
PITTSBURGH   TRIB

VIDEO       More Videos

Daily Photo Galleries



Exhibit C 022

Prosecutors often see reporters as a "shortcut" to discover information, but journalists' ability to protect sources is key to their job as government watchdogs, said Gene Policinski, chief operating officer of the Newseum Institute in Washington and senior vice president of its First Amendment Center.

"The concept of a shield law is that it's really government's job to police its own house," he said, "and they shouldn't be relying on journalists to do that."

Andrew Conte is a Trib Total Media staff writer. Reach him at 412-320-7835 or andrewconte@tribweb.com.

*Add Andrew Conte to your Google+ circles.*



Tuesday - Nov. 11, 2014

Follow @AndrewConteTrib      Follow @TribLive

## MORE ARTICLES AND OFFERS

ADVERTISEMENT


Women have been urged to cease posting these kinds of photos on social media.


New York arrest records. Who do you know?


NEW Rule in New York: If you pay for car insurance, you better read this...


[ New York] man finds an unlikely testosterone booster.

Be the first of your friends to follow TribLIVE.com - Pittsburgh's News Source.


Add a comment...

 Also post on Facebook    Posting as Jennifer Hays Bouriez (Not you?)


Anthony Maniscola
Keep up the good work Brad......
Reply · Like ·   3 · Follow Post · October 16 at 7:44pm

Facebook social plugin

 TribLIVE.com - Pittsburgh's News Source
39,155

*Show commenting policy*

## Most-Read Stories

1. Fitzgerald gives up Allegheny County-owned Jeep, pays $42K for mileage
2. Republicans oust Senate majority leader; Turzai wins election to become Speaker of the House
3. 2 Port Authority bus drivers charged in Parkway crash
4. Rossi: Pirates don't need Alvarez at first base
5. Roethlisberger, partner plan to open sports restaurant
6. The high court & ObamaCare: Language matters
7. General Electric to build advanced manufacturing plant in Findlay
8. Monroeville council rejects planned expansion for Hindu temple
9. Precision Therapeutics renamed Helomics, receives $60M investment
10. Greensburg police investigate 11 gunshots fired at car
11. New Stanton ATM robber reaches plea deal

 Subscribe today! Click here for our subscription offers.

# Newsmax

- Rand Paul May Limit Dad's Role in 2016
- Pelosi Denies GOP Wave Happened
- Alan Keyes, Ben Carson, Click Here, DIRECTV 349, DISH 223
- Obama to Unleash Climate Regulation Deluge
- O'Reilly, Megyn Kelly Back Obama's AG Pick
- New Probiotic Fat Burner Takes GNC by Storm
- American Homeowners Are In for an Extremely Big Surprise
- How Older Men Are Increasing Testosterone

What's This?

Click Covers for Deals


Babies R Us      Dell
Expires Nov. 26    Expires Nov. 28


Babies R Us      Dell



 
4 DAYS LEFT     4 DAYS LEFT
Staples      Big Lots

Exhibit C 023

TRIB live

Subscribe    Place Ad    Buy Trib Photos    Jobs    Homes    Search Autos    Classifieds    SportsTalk    Contests

# TRIBLIVE | Politics

Search.

Western Pennsylvania's top news and sports source

Politics

Headlines    Salena Zito    Election Results

 SEE WHAT OUR SUBSCRIBERS ARE BEAMING ABOUT

BIRCHBOX·    SUBSCRIBE



Larger text  Smaller text | Order Photo Reprints

# Critics claim state Attorney General Kane puts politics first



AP

Pennsylvania state attorney general Kathleen Kane, right, speaks about a multi state task force formed to address the Northeast heroin crisis during a news conference accompanied by New York state attorney general Eric Schneiderman, left, Wednesday, Oct. 8, 2014, in New York. Authorities in four Northeast states have agreed to collaborate in investigations of heroin trafficking that often cross state lines. The coalition so far includes New York, Pennsylvania, New Jersey and Massachusetts, with other states expected to join. (AP Photo/Julie Jacobson)

By Brad Bumsted
Friday, Oct. 24, 2014, 10:37 p.m.

HARRISBURG — Call it a difficult year for Pennsylvania Attorney General Kathleen Kane, the first Democrat and women elected to the office.

Her selective release of pornographic emails a little more than a month before Election Day has critics crying foul that her actions are politically motivated.

"To paraphrase 'Casablanca,' I'm shocked, shocked there are political games being played in this state so close to an election," said John Kennedy, a political science professor at West Chester University and author of a book on state elections.

Yet some analysts think it's too soon to judge Kane's role in what has become a burgeoning scandal in all branches of state government.

"There is no political motivation involved," said her spokeswoman Renee Martin. "We released the information we could, when we did, while staying within' legal and contractual boundaries.

Kane has refused requests for an interview.

The embarrassing disclosure of emails involving former and current staffers in the Attorney General's Office and at least two state Supreme Court justices is one of several matters this year that may not have gone the way Kane initially intended.

Under pressure from Gov. Tom Corbett and Chief Justice Ronald Castille to share any sexually explicit emails sent or received by state employees or jurists, Kane did so, though in a piecemeal fashion that irked her critics. In the aftermath,

VIDEO

More Videos



Exhibit C 024

Justice Seamus McCaffery was suspended Monday. Previously, three men who had worked for Corbett, including a Cabinet member, resigned, one retired and a fifth left a job in the private sector.

Kane has quarreled with Democrats and Republicans. The GOP-majority executive committee of the Pennsylvania District Attorneys Association in July rebuked her for "continued public attacks on the successful work of career prosecutors," and implored: "The focus on winning the news cycle must end."

Kane's office is under an apparent investigation of whether someone on staff leaked secret grand jury information this year to the Philadelphia newspapers.

"She does not look like the fair-haired attorney general she did early on," said Steven Peterson, a political science professor at Penn State's Harrisburg campus.

Asked whether it's been a bad year, Martin replied, "I'd say we are operating on all eight cylinders here, doing the work that Attorney General Kane was elected to do."

Martin cited several 2014 accomplishments: continued prosecutions of child predators; a court ruling that recoups $120 million in contested tobacco lawsuit settlement money; installation of a "mobile street crime unit" in Hazleton for six months; 1,172 drug arrests; and garnering millions of dollars through insurance and Medicaid fraud litigation.

**Tumultuous months**

On the heels of positive press during her first year in office, Kane's second year has taken twists and turns since spring.

Her "inexplicable" year, said political analyst G. Terry Madonna, started in March when Kane declined to prosecute four Philadelphia Democrats videotaped while accepting cash from an undercover lobbyist. That led to a public clash with Philadelphia District Attorney Seth Williams, a Democrat who has a grand jury investigating the case she dismissed as "legally flawed."

Williams on Thursday brought charges against an ex-Traffic Court judge in the case, accusing her of bribery, conspiracy and conflict of interest for allegedly accepting a $2,000 Tiffany & Co. bracelet.

In June, Kane's 15-month review of the prosecution of child molester Jerry Sandusky found no evidence that Corbett, as attorney general, slowed the investigation of the former Penn State assistant football coach to win the governor's race. Her review, led by former federal prosecutor Geoffrey Moulton, cost taxpayers at least $180,000, her office said.

When releasing that signature report, Kane baffled reporters at a news conference by claiming Sandusky had molested two other children. She backpedaled after trial prosecutors dismissed it as fiction.

In August, the Pennsylvania Turnpike Commission "pay-to-play" case Kane announced in March 2013 with accusations of bribery and bid-rigging appeared to start falling apart. Its prosecutor, Laurel Brandstetter, resigned. Two defendants received probation without verdict. Then a judge dismissed charges against an ex-Senate Democratic leader, leaving three of eight people to be tried.

But Kane can "recover, and is recovering, from the year of no-good news and questions about her political and legal acumen," said Anthony May, former top aide to the late Democratic Gov. Robert P. Casey.

May said news coverage of the emails shared among attorney general staffers from 2008 to 2012 could be a plus for Kane "because she is not the focus."

By releasing emails involving eight men, five of whom have lost their jobs, Kane went "on the offensive on a compelling issue, something she really needed to do, considering the battering she was taking from political — yes, political — enemies," May said.

**Naming Republicans?**

Moulton's investigators found the racy and racist emails while reconstructing messages that staffers had deleted. Moulton told Corbett that he had found inappropriate emails; the governor has said he did not know employees were sharing them and that he would have stopped it.

Kane denied open records requests by the Tribune-Review and other newspapers to examine the emails. Days later, she released images from emails received or sent by eight men who worked for Corbett and his successor, Linda Kelly.

Her office blacked out most names from the information made public, and Kane has refused to release emails implicating about 30 unionized staffers.

"You shouldn't pick and choose who you are going to release, unless you have a darned good reason not to release certain names," said former U.S. Attorney James West of Hummelstown.

Kane's office claims internal disciplinary actions are under way and union contracts prevent the release of embarrassing information about workers.

Corbett, facing a fierce re-election challenge by Democrat Tom Wolf on Nov. 4, said in Pittsburgh last week: "I will say, the only names she put out so far are people that are Republicans, or people that work for me at this point in time."

Kane's actions are hard to evaluate but raise "reasonable questions about the political considerations involved in the choices," said Christopher Borick, a political science professor at Muhlenberg College in Allentown.

**Grand jury probe**

A special prosecutor and grand jury in Norristown are investigating whether Kane's office leaked grand jury information about a 2009 case, according to The Philadelphia Inquirer.

The Inquirer reported in September that attorney Thomas Carluccio of Montgomery County heads the inquiry into whether someone leaked records to try to discredit Kane's critics.

The newspaper said Montgomery County Judge William Carpenter, the supervising grand jury judge in Eastern Pennsylvania, appointed Carluccio to determine how the Philadelphia Daily News obtained documents from an investigation of Philadelphia political activist J. Whyatt Mondesire, who was not charged with a crime.

Kane has not commented on the matter.

Violating grand jury secrecy rules can lead to a contempt of court charge and potential six-month prison sentence.

In July 2013, The Inquirer reported that Kane persuaded the state Supreme Court to remove Judge Barry Feudale from overseeing statewide grand jury investigations in Harrisburg. The newspaper did not say how it learned of the sealed proceedings.

It said Kane moved to oust Feudale, a Democrat, on learning that he criticized her in an email to former Chief Deputy Attorney General Frank Fina.

Do you plan to attend O Starry Night presented by Star 100.7 Pittsburgh at the Petersen Events Center?

- Yes
- No
- No Sure
- Never heard of it

Submit

**Daily Photo Galleries**



Tuesday - Nov. 11, 2014

**Click Covers for Deals**

 

Expires Nov. 26    Expires Nov. 28



Babies R Us    Dell

   

4 DAYS LEFT    4 DAYS LEFT

Free

Staples    Big Lots

**Newsmax**

- Rand Paul May Limit Dad's Role in 2016
- Pelosi Denies GOP Wave Happened
- Alan Keyes, Ben Carson, Click Here, DIRECTV 349, DISH 223
- Obama to Unleash Climate Regulation Deluge
- O'Reilly, Megyn Kelly Back Obama's AG

Exhibit C 025

Feudale expressed regret for taking a cheap shot but told The Inquirer: "Kane is a politician first, second, and third, and perhaps an AG ... fourth and fifth."

Feudale oversaw grand juries in major cases that Fina led, including legislative corruption and the Sandusky child sex abuse case.

Fina, who works for the Philadelphia district attorney, in August persuaded Cambria County Judge Norman A. Krumenacker III to freeze the release of the pornographic emails under the open records law, arguing that they contained grand jury material. Krumenacker identified Fina when he lifted the hold on the emails.

Brad Bumsted is Trib Total Media's state Capitol reporter. Reach him at 717-787-1405 or bbumsted@tribweb.com. Staff writer Melissa Daniels contributed to this report.

Follow @BBumsted_Trib        Follow @TribLive

Pick

- New Probiotic Fat Burner Takes GNC by Storm

- American Homeowners Are In for an Extremely Big Surprise

- Make Money Online Following Sports and Concerts

What's This?

## MORE ARTICLES AND OFFERS

ADVERTISEMENT

   

Women have been urged to cease posting these kinds of photos on social media.

Controversy over new skinny pill -- Is it too strong for store shelves?...

Cornell Scientist Discovers a New Vitamin That Could Make People Live Forever.

Top 10 Richest Women In The World

Google +    Reddit    Blogger

Fark

 Be the first of your friends to follow TribLIVE.com - Pittsburgh's News Source.

 Add a comment...

☑ Also post on Facebook.    Posting as Jennifer Hays Bouriel (Not you?)

**Ellen Thomas**
AG Kane is just following in the traditions of Republican Attorney Generals that came before her, these Republican AG's used politics to protect their buddies, did they not?
Reply · Like ·   1 · Follow Post · October 30 at 2:24am

 **Art DiGiacomo** · Top Commenter · NOYFB
Political games? Is that different than the political games being played by the current governor going around PA passing out hundreds of millions of taxpayer dollars to corporations telling us that the money will create jobs? That's not politics?
Reply · Like ·   1 · Follow Post · October 24 at 11:05pm

 **Stephen Randall Malone** ·   Top Commenter · Works at I AM HAPPILY RETIRED
Go ahead..Vote for Wolfe....You will regret it...
Reply · Like ·   2 · October 25 at 11:36am

 **Richard Gaudino** ·   Top Commenter · Indiana University of Pennsylvania
Go ahead & put the Democrat in as Gov., you'll end up like us in Maryland, complaining about high taxes & wasted spending.
Reply · Like ·   1 · Follow Post · October 25 at 4:01pm

**Ellen Thomas**
We already got higher taxes under the Republicans!
Reply · Like ·   1 · October 30 at 2:25am

 **Deborah Hell** ·   Top Commenter
If what was good for the goose is good for the gander, the 30 current employees of the AG's office would be gone. No exceptions. No excuses.

As for the Philly fiasco, that is obvious.
Reply · Like · Follow Post · October 25 at 6:49am

 **Stephen Randall Malone** ·   Top Commenter · Works at I AM HAPPILY RETIRED
Well until the LIV's put Wolfe in Office..We will all be Screwed...
Reply · Like · Follow Post · October 25 at 11:36am

 **Ron Scott** ·   Top Commenter · Grove City, Pennsylvania
Stephen YES WE WILL!
He's a wolf in sheep's clothing!
This state will be screwed big time if wold gets in!
Reply · Like · October 25 at 12:29pm

**Ellen Thomas**

Exhibit C 026

Monday, November 10, 2014

Member Login: Sign In | Register  f  t  g

# philly●com

🏠 | News | Sports | Entertainment | Business | Opinion | Food | Lifestyle | Health | More

BREAKING  NEWS VIDEO  VOICES/BLOGS  PHILADELPHIA  NEW JERSEY  POLITICS  EDUCATION  OPINION  OBITUARIES  NATION/WORLD  WEATHER  TRAFFIC  LOTTERY

## Kane's car crash derailed testimony a second time

Share   Tweet   Reddit   Email   253 COMMENTS



The 1999 Jeep that Attorney General Kathleen Kane's SUV hit early in the morning of Oct. 21 in Dunmore, Lackawanna County. DAVID SWANSON / Staff Photographer



 Crnig R. McCoy and Angela Couloumbis, Inquirer Staff Writers
LAST UPDATED: Sunday, November 9, 2014, 1:10 AM

The early-morning car accident that left Pennsylvania Attorney General Kathleen G. Kane with a concussion last month occurred hours before she was scheduled to testify in a grand jury investigation into possible improper leaks by her office, according to people with knowledge of the case.

It was the second time this fall Kane canceled plans to take the stand, the sources said.

Kane was scheduled to appear that morning in a Montgomery County courtroom, where a special prosecutor is examining how confidential records about a 2009 investigation run by her Republican predecessors became public.

Her testimony has been rescheduled for later this month, the sources said. The grand jury expires within a few weeks, they said.

MORE COVERAGE
Wolf likely will face difficult dealings with GOP

Renee Martin, Kane's spokeswoman, declined to discuss any matter related to the grand jury. She has said her office cannot even confirm or deny the existence of one.

*Travel Deals*

Show Ad ⌄

Advertisement

 Women have been urged to cease posting these kinds of photos on social media.

 Find out how Wells Fargo Advisors work with you to help you reach your goals.

 Top 10 Richest Women in The World

Odd Trick "Fights" Diabetes

The 40 Sexiest And Most Revealing Celebrity Selfies And Twitter Pics of All Time!

Shop Brilliant Earth's beyond conflict free diamond rings, antique rings, and fine jewelry!

*Latest News Video*



More videos:

*Most Viewed News Stories:*

 Teen pulls Philly cop from burning car

 Bouncers shoot man at Phila. strip club

Exhibit C 027



$249 & up – Ends 11/16:
Caribbean Cruise Sale
w/Upgrades
See all travel deals »

LISTED BY TRAVELZOO
*Some fares, fees additional

### Weekly Circulars



BUY TWO

TARGET USA:
Buy Two, Get One Free
All Video Games
THIS WEEK ONLY



JCPENNEY:
Get an Extra 20% Off with
Your JCP Credit Card and
Coupon
EXPIRES TOMORROW

See More Circulars »

She did say that Kane, 48, was recuperating and working from her home in Clarks Summit, about 10 miles north of Scranton, and that her doctors had forbidden her to travel. Martin said that she did not know when Kane was expected to return to work in Harrisburg but that the attorney general was connected with the office by computer and phone. She added: "It's not affecting how work is done here."

The Inquirer has reported that lawyer Thomas E. Carluccio is the special prosecutor for the grand jury sitting in Montgomery County. His appointment was authorized by Chief Justice Ronald D. Castille. In his position, Carluccio is examining an alleged leak to the Philadelphia Daily News about a 2009 grand jury inquiry into the finances of activist J. Whyatt Mondesire, former head of the Philadelphia NAACP.

Violating grand jury secrecy rules can be punished by up to six months in prison.

The Daily News story questioned whether Frank G. Fina and another ranking prosecutor in the Attorney General's Office had pursued the Mondesire probe aggressively. No charges were filed against Mondesire.

Fina has been locked in an increasingly bitter and public battle with Kane over how cases were handled.

As part of Carluccio's probe, his investigators have subpoenaed Kane and other officials on her staff.

Kane's first planned appearance was canceled because she had a scheduling conflict, the sources say. It was rescheduled for Oct. 21.

Just before 7 that morning, the SUV carrying Kane and her security detail hit an empty parked car in Dunmore, a small town near Scranton, according to a police report. The vehicle that was hit - a 1999 Jeep - had dents on one side when an Inquirer photographer took photos of it last week.

The two agents with Kane at the time were Patrick Reese and Robert Ruddy. Both had been Dunmore police officers before Kane hired them last year. Reese had been the police chief, Ruddy a veteran officer.

According to the police report, Ruddy was driving and Reese was in the front passenger seat.

The accident report by Dunmore police, released by Martin on Oct. 31, said the crash occurred when the driver of the SUV lost sight of the dark, rain-slicked road as his iPad slipped off the seat.

There was disagreement about whether Kane was wearing a seat belt.

The report said Kane and the men were wearing shoulder and seat belts. But Martin said Kane was not belted in and struck her head on impact. The cost of the damage to her car was estimated at $964, state records show.

None of the three was taken to a hospital by emergency medical personnel, according to the police report. Kane did go to the emergency room, and subsequently visited her doctor, Martin said.

Kane's office did not release information about the accident until The Inquirer asked about it 10 days after the crash.



Another teacher assaulted at Bartram



Kane's car crash derailed testimony again



US bishops struggling to adapt to pope



*Also on Philly.com*



BUSINESS:
The 10 worst cars of all time

HEALTH:

The 5 best exercises for runners

SPORTS:

Sanchez has chance to be great

ENTERTAINMENT:

Stephen A. Smith to broadcast from UPenn

CRAIG LABAN

Bardot: Sophisticated, if a bit faux, French fare **XX**

JOBS:

How should I manage my workload while I'm on vacation?

*Stay Connected*

Get the latest Philly.com Daily Headlines newsletter delivered to your email. Sign up now!

Enter email address to sign up

Already a philly.com member?  ○ Yes  ○ No




Exhibit C 028

Martin said the office didn't report the crash because it considered it a minor matter that did not affect the office's performance.

She said she also expected Dunmore police to issue the news. That didn't happen. Dunmore Police Chief Sal Marchese didn't return calls from The Inquirer. He told the Scranton Times-Tribune there was "no particular reason" for not issuing the news.

Martin said last week all the participants were recovering. "We thank everyone for their concerns," she said in a statement.



acolumbis@phillynews.com

717-787-5934 @Angelasink

Exhibit C 029

M.D. Misc. Dkt.

1-175 2014

FILED
11/14/2014
Supreme Court
Middle District

UNSEALED PER ORDER OF
THE COURT DATED
AUGUST 26, 2015

# PLEADING   ONE

------

# ** UNDER SEAL **

Received in Supreme Court

NOV 1 4 2014

Middle

## M.D. Misc. Dkt.

## 175 2014

---

# IN THE COURT OF COMMON PLEAS MONTGOMERY COUNTY, PA

| | |
|---|---|
| IN RE: | SUPREME COURT OF PENNSYLVANIA<br>NO. 176 M.D.D MISC. KT 2012 |
| THE THIRTY-FIVE STATEWIDE<br>INVESTIGATING GRAND JURY | MONTGOMERY COUNTY COMMON PLEAS<br>M.D. 2644-2012 |

---

## RESPONSE OF SPECIAL PROSECUTOR
## TO THE MOTION TO FILE UNDER SEAL
## THE EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF
### OF ATTORNEY GENERAL KATHLEEN G. KANE

Thomas E. Carluccio, Special Prosecutor to the Investigatory Grand Jury hereby responds to the *Motion to File Under Seal the Emergency Application for Extraordinary Relief* filed by the Movant, Attorney General Kathleen G. Kane and states in support thereof as follows:

1. The averments set forth in this paragraph succinctly state the import of the relief Attorney General Kathleen G. Kane ("A.G. Kane") seeks under her *Emergency Application for Extraordinary Relief*, and no response is required of the Respondent hereunder.

2. Admitted. By way of further answer, Respondent takes no exception to the Movant's request that the *Emergency Application for Extraordinary Relief* be filed under seal.

3. Admitted.

Received in Supreme Court

NOV 1 4 2014

Middle

WHEREFORE, the *Motion to File Under Seal the Emergency Application for Extraordinary Relief* filed by Attorney General Kane should be granted.

_____

Thomas E. Carluccio, Esquire
Attorney I.D. No. # 81858
Plymouth Greene Office Campus
1000 Germantown Pike, Suite D-3
Plymouth Meeting, PA 19464-2484
(484) 674-2899
*Special Prosecutor of Investigating Grand Jury No. #35*

DATED:   11/14/2014

# VERIFICATION

I, Thomas E. Carluccio, Esq. as Special Prosecutor to the Investigating Grand Jury No #35

appointed by the Pennsylvania Supreme Court, do hereby state that after due diligence and investigation

into the operative events underlying the subject matter of the *Motion to File Under Seal the*

*Emergency Application for Extraordinary Relief* (the "Motion") filed of record with the Court by the

Attorney General Kathleen G. Kane, I hereby represent that the averments set forth in the foregoing

Response to said Motion are true and correct to the best of my knowledge, information and belief. I

understand that false statements herein are made subject to the penalties of 18 Pa. C.S.A. §4904 relating

to unsworn falsification to authorities.

Thomas E. Carluccio, Esquire
Attorney I.D. No. # 81858
Plymouth Greene Office Campus
1000 Germantown Pike, Suite D-3
Plymouth Meeting, PA 19464-2484
(484) 674-2899
*Special Prosecutor of Investigating Grand Jury No. #35*

M.D. Misc. Dkt.

1:175 2014

FILED
11/14/2014
Supreme Court
Middle District

UNSEALED PER ORDER OF
THE COURT DATED
AUGUST 26, 2015

# PLEADING   TWO

# ** UNDER SEAL **

Received In Supreme Court

NOV 1 4 2014

Middle

M.D. Misc. Dkt.

175 2014

# IN THE COURT OF COMMON PLEAS MONTGOMERY COUNTY, PA

IN RE:

THE THIRTY-FIVE STATEWIDE
INVESTIGATING GRAND JURY

SUPREME COURT OF PENNSYLVANIA
NO. 171 M.D.D MISC. KT 2012

MONTGOMERY COUNTY COMMON PLEAS
M.D. 2644-2012

## RESPONSE OF SPECIAL PROSECUTOR
## TO THE EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF
### OF ATTORNEY GENERAL KATHLEEN G. KANE

Thomas E. Carluccio, Special Prosecutor to the Investigating Grand Jury hereby responds to the *Emergency Application for Extraordinary Relief* filed by the Movant, Attorney General Kathleen G. Kane, by and through her privately retained legal counsel. and states in support thereof as follows:

1.    Admitted.

2.    Admitted.    By way of further answer, a comprehensive response to the representations made in support of the *Emergency Application for Extraordinary Relief (the* "Application") are provided hereinafter in New Matter below.

3.    Admitted.    By way of further answer, Respondent takes no exception to the Movant's request that the Application be filed under seal, and has taken such position in its Response to the Motion to File Under Seal the Emergency Application for Extraordinary Relief in pleadings independently docketed with this Honorable Court assigned: Supreme Court No. # 176 M.D.D. Misc. KT 2012.

Pleading Under Seal of Court

Page #1 of 12

Received in Supreme Court

NOV 1 4 2014

Middle

# NEW MATTER

4.     The Respondent to the underlying Application, Thomas E. Carluccio, Esq., appointed Special Prosecutor, hereby incorporates herein by reference its responses to the Application filed by Attorney General Kathleen G. Kane, by and through her privately retained legal counsel, reflected in the preceding paragraphs, inclusive, above as though fully set forth at length herein.

### BACKGROUND

5.     Under the 5/29/14 Order of the Hon. William R. Carpenter convened the 35th Investigating Grand Jury and contemporaneously appointed Respondent as its Special Prosecutor in accordance with the authority vested in it by the 1078 Pennsylvania Investigating Grand Jury Act of 1978, 42 Pa. C.S. ¶4541, et. seq. and the procedural rules that followed (Pa. R.Crim. P 220, et. seq.) as well as relevant case law. A copy of the aforesaid Order is attached hereto made a part hereof and marked **Exhibit A**.

6.     As stated in Supervising Judge Carpenter's 5/29/14 Order, the central focus of the established 35th Investigating Grand Jury is to undertake investigation into allegations that an alleged illegal disclosure of information protected by the law and rules of Grand Jury secrecy pertaining to deliberations of a prior 2009 Statewide Investigating Jury (the "2009 Grand Jury") had been impermissibly compromised.

7.     Thereafter, the Philadelphia Daily News on 6/6/14 disclosed grand jury information to the public involving political activist J. Whyatt Mondesire.

8.     Following the report, the 35th Grand Jury and its Special Prosecutor received

information suggesting the alleged information leaks emanated in whole or in part from sources within the Office of the Attorney General.

9. At all times material and relevant to the deliberations of the 35th Investigating Grand Jury, Respondent has principally focused on determining if Attorney General Kane's office played a role in directly or indirectly releasing information/documentation protected under seal pertaining to the 2009 Grand Jury, or had information that might lead to identifying the source(s) of any leak.

10. Notwithstanding, Respondent's disciplined focus in seeking information in any role played by Attorney General Kane's Office in the aforesaid leak(s), Movant has sought by filing her Application to divert attention from Respondent's apolitical effort to investigate leaks of information/documentation under seal pertaining to a Grand Jury to an assessment of the propriety of certain emails which Attorney General Kane has characterized to represent "pornography".

11. It is respectfully submitted that such diversion represents an ongoing strategic effort on the part of Attorney General Kane not to honor a subpoena for her to testify before the 35th Grand Jury, as directly evidenced by the central theme advanced in the Application hereunder.

## SUBPOENA No #1

12. Respondent issued its first subpoena to Attorney General Kane on 9/11/14, calling for her testimony to be provided before the 35th Investigating Grand Jury on Thursday, 9/18/14, a copy of which is attached hereto, made a part hereof and marked **Exhibit B** (Subpoena No #1).

13. Respondent agreed to reschedule Attorney General Kane's testimony under

Subpoena No #1 to the following day, 9/19/14 - at her request - so that she could attend the funeral of Cpl. Bryon Dickson who was killed in an ambush undertaken in Pike County at the hands of accused killer Eric Frein.

14.    Notwithstanding the accommodation extended to Attorney General Kane, she elected to again reschedule her testimony.

15.    Thereafter, Attorney General Kane, by and through her retained private legal counsel, sought to both quash Subpoena No#2 and to contest the authority of the Special Prosecutor asserting legal defect(s) to his appointment by Supervising Judge Carpenter under her filing of a *Motion to Quash Subpoena* filed of record with this Honorable Court on 9/29/14. [1]

16.    Quixotically, in her *Motion to Quash Subpoena*, Attorney General Kane advanced the argument that Subpoena No #1 should be quashed, for among other reasons, she was not one of the limited group of individuals who were sworn to secrecy to the 29th Grand Jury, and as such was not legally obligated to maintain the secrecy of its proceedings.

17.    Indeed to quote from her Memorandum of Law in Support of the *Motion to Quash Subpoena*, Attorney General Kane – through private legal counsel and not from the Office of the Attorney General expressly states:

> "... Attorney General Kane was not sworn to secrecy with regard to the 2009 grand jury proceedings. By statute, only a limited group of individuals are sworn to secrecy with regard to grand jury proceedings, and only those individuals can subsequently , 'be in contempt of court if they reveal any information which they are sworn to keep secret.' 42 Pa. C.S. § 4549(b). Because Attorney General Kane had no involvement whatsoever with the 2009 grand jury proceedings, she could

---

[1]  It should be noted that Movant's pleading fails to directly within its text to articulate the substantive representations serving as the foundation of her stated position. Rather the draftsman has elected to incorporate by reference a Memorandum of Law in Support of the subject Motion, which articulates the basis for the requested relief.

not as a matter of law be in contempt of court with regard to any disclosure related to that grand jury proceeding." (see page 1and 2 of Memorandum of Law in Support of the Motion to Quash, filed 9/29/14)

18.  What is alarming regarding such position is that Attorney General Kane entirely ignores her duties and obligations to undertake the Office of Attorney General, and as such must assuredly accede to the obligations and duties of her predecessors in office to maintain the secrecy of prior grand juries and thereby preserve the integrity of the function of the entire grand jury "system." [2]

19.  Respondent filed a timely response to the *Motion to Quash Subpoena*, and in concert with such filing presented his "Schofield" Affidavit to the Court wherein Respondent articulated with precision the basis for which he sought the testimony before the 35th Grand Jury of Attorney General Kane. A copy of the "Schofield" Affidavit, in didacted form to conform with the confidential nature of the 35th Grand Jury proceedings in view of Movant's right to review pleadings hereunder is attached hereto, made a part hereof and marked **Exhibit C** (the "Schofield Affidavit").

20.  For purposes of convenience to this Honorable Court, Paragraphs 9-12 are provided as follows, to demonstrate the disciplined focus of the Respondent in seeking the testimony of Attorney General Kane:

> 9.  The purpose in seeking the testimony of Attorney General Kane under the subject subpoena, is to determine if Attorney Kane maintains direct or inferential information on matters pertaining to the unauthorized disclosure of the existence and contents of the *Confidential Information* including without limitation: (a) what persons were present at the subject staff meetings and/or conferences; (b) whether she or others were aware of the presence of the *Confidential Information* at such

[2] Moreover, it is asserted such an argument should be properly advanced by the Office of the Attorney General on behalf of Attorney General Kane in furtherance of her public office, and not by her private legal counsel.

staff meetings and/or conferences; (c) whether she or others were aware that the *Confidential Information* was at all times deemed private and confidential due its inclusion into the evidence of the 29th Investigating Grand Jury; (d) to explore whether Attorney General Kane maintains information to assist the Grand Jury in determining if the *Confidential Information* was reviewed, copied, possessed, discussed and/or distributed among one or more unauthorized third persons; and (e) the identity of those person(s) who impermissibly disclosed the *Confidential Information* to members of the press or the general public.

10. Upon reasonable information and belief, the Affiant hereby asserts that Attorney General Kane be compelled to testify and subject herself through the issued subpoena to a reasonable line of questioning on those issues as aforementioned, together with questions on concerns that may arise in the development of her testimony and such testimony is proper and warranted under the circumstances.

11. The Affiant hereby certifies that the testimony of Attorney General Kane is either: directly relevant and material to the investigation undertaken by 35th Investigating Grand Jury; or upon information and reasonable belief will lead to relevant and material information relating to the unauthorized disclosure of the *Confidential Information*.

12. The Affiant hereby states that the service of a subpoena upon Attorney General Kane for her testimony is warranted under the circumstances, represents a good-faith basis for compelling such testimony, and that Affiant seeks such testimony for no other inappropriate basis.

21. In view of the Motion to Quash Subpoena and response of Respondent thereto, Supervising Judge Carpenter scheduled a Hearing in Camera among all parties.

22. Such Hearing in Camera was conducted on 10/14/14, at which all parties were represented, and resulted in Supervising Judge Carpenter's Order of 10/24/14 wherein he granted Attorney General Kane's motion to review the Order appointing Thomas Carluccio as Special Prosecutor, together with a didacted copy of the Schofield Affidavit, while denying the Motion to quash the Subpoena No #1.

23. A copy of Supervising Judge Carpenter's Order of 10/20/14 is attached hereto, made a part hereof and marked **Exhibit D**.

## SUBPOENA No #2

24.     Respondent again issued a second subpoena to Attorney General Kane on 9/25/14, calling for her testimony to be provided before the 35th Investigating Grand Jury on Tuesday, 10/21/14, a copy of which is attached hereto, made a part hereof and marked **Exhibit C** (Subpoena No #2).

25.     The morning of the scheduled subpoenaed testimony, through her retained private legal counsel, Attorney General Kane again requested a rescheduling of her testimony for three (3) days later that week on Friday, 10/24/14.

26.     The basis for the rescheduling was due to Attorney General Kane having incurred physical conditions, notably a diagnosed concussion, she sustained in a reported motor vehicle accident.

27.     The subject motor vehicle accident was first reported by private counsel to Attorney General Kane, accompanied by no formal notification from the Office of the Attorney General.

28.     Upon information and reasonable belief, Respondent asserts that no news report of the subject motor vehicle accident was issued by any news media until days after the accident and the scheduled subpoenaed testimony.

29.     Shortly before the rescheduled subpoenaed testimony on Friday 10/24/14, private counsel again requested an amicable accommodation to reschedule due to Attorney General Kane's continuing to be symptomatic to conditions associated with a diagnosed concussion.

## SUBPOENA No #3

30.  Upon a lack of communication with private counsel to Attorney General Kane to reschedule her testimony, Respondent found it prudent to again issue a third subpoena to Attorney General Kane on 10/29/14, calling for her testimony to be provided before the 35th Investigating Grand Jury on Monday, 11/17/14, a copy of which is attached hereto, made a part hereof and marked **Exhibit F** (Subpoena No #3).

31.  Without notice of any issues to the issued subpoena for testimony before the 35th Grand Jury taken by Attorney General Kane, her private legal counsel elected to strategically file the underlying Application only days before her scheduled testimony on 11/12/14 – in what can only be characterized as an ongoing effort to avoid having to testify.

32.  Again, the Application effectively seeks three grounds for relief, as follows:

(i)  to discharge the 35th Grand Jury, because of the assertions that:

(a)  that it was established not because of an intent to explore an impermissible leak of information/documentation under seal pertaining to the 39th Grand Jury, but in reliance upon the deceptive statements presented by Frank Fina and E. Marc Constanzo purportedly for the ulterior objective of seeking protections from public disclosures that may well impugn their personal and professional reputations; and

(b)  effectively prevents the Office of the Attorney General to pursue an investigation into whether Fina and Constanzo engaged in misappropriation of professional time and equipment to disseminate "pornographic" material through email;

(ii)  to quash Subpoena No# 3 as moot in view of the discharge of the 35th Grand Jury; and

(iii)  to vacate the protective measures provided under Supervising Judge Carpenter's 9/17/14 Order under seal, a copy of which is attached hereto,

---

made a part hereof, and marked **Exhibit G**. (the "Protective Order") [3]

33. Notwithstanding, the arguments made in the Application, Movant has elected to raise a red herring, whereunder she misrepresents the principal purpose of empaneling the 35th Grand Jury – to investigate whether there was an impermissible release of information/documentation under seal pertaining to the deliberations of the 29th Grand Jury.

34. Put simply, the concerns raised by Movant pertaining to emails are simply not relevant to the ongoing deliberations of the 35th Grand Jury, and may well represent an ancillary distraction to the proceedings of the 35th Grand Jury.

### THE POSITION OF THE SPECIAL PROSECUTOR ON WHETHER ATTORNEY GENERAL KANE IS SUBJECT TO A SUBPOENA TO TESTIFY BEFORE A GRAND JURY

35. The argument of Attorney General Kane that she is not subject to the subpoena because it is outside the purview of the Special Prosecutor is directly countered by application of 42 Pa. C.S. §4548(a), which in relevant part provides as follows:

> §4548(a) Powers of investigating grand jury
>
> The investigating grand jury shall have the power to inquire into offenses against the criminal laws of the Commonwealth alleged to have been committed within the county or counties in which it is summoned. Such power shall include the investigative resources of the grand jury which shall include but not be limited to the power of subpoena, . . .

36. The aforesaid statute provides no exemption of persons to whom a subpoena may be directed.

---

[3] what the Movant has referenced as the "Protective Order"

---

Pleading Under Seal of Court                                    Page #9 of 12

37. Further, it is inconceivable that the chief prosecuting attorney within the Commonwealth may assert she is immune from the imposed obligation of confidentiality to all participants in a grand jury merely because she was not directly sworn-in as a witness. Indeed, it is asserted that the Attorney General is effectively and implicitly bound to the confidentiality imposed by all Investigating grand juries during their tenure of public service by simple operation of their held position. To suggest otherwise is to threaten the integrity of the judicial system.

38. Moreover, 42 Pa. C.S. §4542 provides authority to the Special Prosecutor to compel the attendance of investigating witnesses, and provides in relevant part as follows:

§4542 Investigative resources of the grand jury

"The power to compel the attendance of investigating witnesses; the power to compel the testimony of investigating witnesses under oath; the power to take investigating testimony from witnesses who have been granted immunity; the power to require the production of documents, records and other evidence. . ."

39. In addressing the authority to subpoena a witness, Judge Savitt adroitly opined in his seminal publication, Pennsylvania Grand Jury Practice, quoted in *IN RE: Special Investigating Grand Jury of April 26, 1984*, 37 PA. D &C 3d 516) 1986 at page 520:

"It can be seen from a reading of these excerpts from the act that broad subpoena power is vested in the investigating authority. The rationale is apparent. Without such authority, how could a prosecutor effectively investigate and ferret out crime? To follow the narrow construction that appellants desire would have a chilling effect on any and all types of investigation. It would defeat the very purpose of the act." Judge Savitt, Pennsylvania Grand Jury Practice, §21.04(A)(3) at p. 92-93, §21.04(C)(3) at p. 96 (1983).

**THE SUPREME COURT'S DISPOSITION
ON ATTORNEY GENERAL KANE'S
PETITION FOR SUPREME COURT REVIEW
FOR VACATING THE PROTECTIVE ORDER REMAINS OUTSTANDING**

40. Further, it is respectfully submitted that no emergency exist here, that warrants the extraordinary powers of this Honorable Court be assumed.

41. Accordingly it follows that there should be no stay of the Subpoena for Attorney General Kane to testify before the 35th Grand Jury.

42. The record of the proceedings relating to these concerns is clear - Supervising Judge Carpenter has considered the concerns of Attorney General Kane towards her assertions the 35th Grand Jury should be terminated and the subpoena for her testimony should be quashed.

43. As stated, such concerns were addressed in a Hearing in-camera, and were denied under Supervising Judge Carpenter's Order of 10/20/14.

44. Relative to Movant's position that the Protective Order precludes her from investigating and publicly disclosing matters relating to the questionable emails, it is asserted that such claims are best pursued by Attorney General Kane, in the capacity of her public office, through the Office of the Attorney General in accordance with THE INVESTIGATING GRAND JURY ACT, and specifically 42 Pa. C.S. §4549(b).

45. Accordingly, it is respectfully submitted that the Movant does not have proper legal standing to pursue having the Protective Order vacated.

46. Moreover, Attorney General Kane's Petition for Supreme Court Review for Vacating the Protective Order filed on 11/10/14 remains outstanding.

47. Under the applicable Rules of Court, the Special Prosecutor as Respondent thereto

understands he has until December 1, 2014 to file its response.

48. In view of the strategic timing of the Application, the Special Prosecutor requires the full complement of time to which he is afforded under the Rules of Court to respond.

49. Accordingly, it would be in the interests of all parties to defer the Supreme Court's ruling on the Application until after addressing the Petition to Vacate the Protective Order, or consolidate the two concerns for a single Hearing.

50. For the reasons set forth above, it is respectfully submitted that the *Emergency Application for Extraordinary Relief* filed by Attorney General Kane should be denied.

**WHEREFORE,** the *Emergency Application for Extraordinary Relief* filed by Attorney General Kane should be DENIED, and Attorney General Kane should be held to honor the Subpoena to testify before the 35th Investigating Grand Jury on a date and time mutually agreeable to the parties, but no later than the end of the session for the 35th Grand Jury scheduled for December 2014.

Thomas E. Carluccio, Esquire
Attorney I.D. No. # 81858
Plymouth Greene Office Campus
1000 Germantown Pike, Suite D-3
Plymouth Meeting, PA 19464-2484
(484) 674-2899
*Special Prosecutor of Investigating Grand Jury No. #35*

DATED: 11/14/2014

# VERIFICATION

I, Thomas E. Carluccio, Esq. as Special Prosecutor to the Investigating Grand Jury No #35 appointed by the Pennsylvania Supreme Court, do hereby state that after due diligence and investigation into the operative events underlying the subject matter of the *Emergency Application for Extraordinary Relief* (the "Application") filed of record with the Court by the Attorney General Kathleen G. Kane, I hereby represent that the averments set forth in the foregoing Response to said Application are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

Thomas E. Carluccio, Esquire
Attorney I.D. No. # 81858
Plymouth Greene Office Campus
1000 Germantown Pike, Suite D-3
Plymouth Meeting, PA 19464-2484
(484) 674-2899
*Special Prosecutor of Investigating Grand Jury No. #35*

 Exhibit "A"
[Order of 5/29/14 of Supervising Judge Carpenter]

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA

IN RE:                                    :
                                          :
THE STATEWIDE                             :
                                          :   MONTGOMERY COUNTY COMMON PLEAS
INVESTIGATING GRAND JURIES                :
                                          :
                                          :
                                          :   In Re: Powers and Responsibilities of
                                          :   Special Prosecutor Exercising
                                          :   Extraordinary Jurisdiction; on Allegations that
                                          :   Secret Grand Jury or Related Information was
                                          :   Unlawfully and/or Negligently
                                          :   Accessed/Released/Compromised

## ORDER

AND NOW, this 29th day of May, 2014, after "preliminary investigation"; this court in its capacity as Supervising Judge of the 35th Statewide Investigating Grand Jury, finds there are reasonable grounds to believe a further more substantive investigation is warranted into allegations that statewide Grand Jury secrecy may have been compromised: It is therefore ORDERED and DIRECTED by this Court in accordance with the authority vested in it by the 1078 Pennsylvania Investigating Grand Jury Act of 1978, 42 Pa. C.S. § 4541, *et seq.* and the procedural rules that followed (Pa.R.Crim.P 220, *et seq.*) as well as relevant case law; that **THOMAS E. CARLUCCIO, ESQUIRE,** be and is hereby appointed Special Prosecutor with full power, independent authority and jurisdiction to investigate and prosecute to the maximum extent authorized by law any offenses related to any alleged illegal disclosure of information protected by the law and/or intentional and/or

negligent violations and rules of Grand Jury secrecy as to a former Statewide Investigating Grand Jury, such as;

1. 42 Pa. C.S. § 4549(b) Disclosure of proceedings by participants other than "witnesses..."all such persons shall be sworn to secrecy, and shall be in contempt of court if they disclose/reveal any information which they are sworn to keep secret."

2. 18 Pa. C.S. § 5101 Obstructing administration of law or other governmental function – "a person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty.

3. Any other applicable offense.

It is FURTHER ORDERED by the Court that the Special Prosecutor:

1. Shall use any appropriate currently empaneled Grand Jury to investigate any alleged or suspected violations of secrecy or concomitant crimes related to such.

2. Shall have the right to request an application for an immunity order from the Attorney General.

3. Shall have the right to employ all appropriate resources including a minimum of one investigator and if necessary, one support staff.

4. Shall have day-to-day independence and will be free to structure the investigation as he wishes and to exercise independent prosecutorial discretion whether, which and when any potential witness should be brought before the Grand Jury and/or whether, which and when charges should be brought, including contempt of court.

5. Shall be permitted, while serving as Special Prosecutor, to consult with past and present members of the Office of Attorney General and take such action as is necessary to ensure that matters he is investigating and/or prosecuting in his role as Special Prosecutor are brought to a successful conclusion, so long as such consultation/action does not present a conflict of interest with his duties as Special Prosecutor and/or violate the secrecy oath.

6. Shall be empowered to respond to interference with his investigation by also having authority to investigate and prosecute crimes committed in the course of, and with the intent to interfere with the Special Prosecution's investigation such as Perjury, Intimidation of witnesses and other applicable and relevant violations of the law.

7. Shall comply with all relevant statutory and case law as well as all applicable canons of ethics.

8. Shall be removed from the position of Special Prosecutor only by the personal action of the Grand Jury Judge and/or the Pa Supreme Court.

9. Shall be appointed for a period not to exceed six months from today, unless the Special Prosecutor makes a written request to the Court for an extension setting forth the reasons for the extension.

10. The Special Prosecutor shall be compensated at the rate of $65.00 an hour to be paid by the Commonwealth of Pennsylvania. The investigator/support staff chosen by the Special Prosecutor shall be compensated at the rate of $20.00 an hour. All those seeking compensation shall keep detailed records of time and services rendered. All shall provide the Supervising Grand Jury Judge with a monthly accounting of time/services rendered.

11. Shall provide the Supervising Grand Jury Judge with periodic summaries of any progress.

12. Submit a report addressed to the Pennsylvania Supreme Court, and the Supervising Grand Jury Judge, setting forth any findings and recommendations on any proposed statutory, rulemaking or recommended practices that would preserve the critical requirement of secrecy in Grand Jury proceedings as well as insuring the rights of defendants to a fair trial and maintaining the integrity of our Grand Juries.

BY THE COURT:

WILLIAM R. CARPENTER,          J.
Supervising Judge

Copies sent on May 29, 2014
By First Class Mail to:
Chief Justice Ronald D. Castille
Pennsylvania Attorney General Kathleen G. Kane
Thomas E. Carluccio, Esquire

 Exhibit "B"
[Subpoena No#1]



## STATEWIDE INVESTIGATING GRAND JURY
—————— SUBPOENA ——————

TO:  ATTORNEY GENERAL       :SUPREME COURT OF PENNSYLVANIA
      KATHLEEN KANE          :NO. 176 M.D. MISC. DKT. 2012
                             :MONTGOMERY COUNTY COMMON PLEAS
                             :M.D. 2644-2012

1.     YOU are ORDERED to appear as a witness before the PENNSYLVANIA STATEWIDE INVESTIGATING GRAND JURY, 1000 Madison Avenue (corner of Trooper and Van Buren Roads), Third Floor, Norristown, Pennsylvania, on Thursday, September 18, 2014, at 8:00 O'clock A.M. to testify and give evidence regarding alleged violations of the laws of the Commonwealth of Pennsylvania and to remain until excused.

2.     YOU are further ORDERED:

FAILURE to attend may cause a warrant to be issued for your arrest and will make you liable under penalty of law for contempt of Court.

DATED:  September 11, 2014                    *William R. Carpenter*

                                        ————————————————————
                                        Hon.  William R. Carpenter
                                        *Supervising Judge*

If you have any questions about your appearance, contact Deputy Attorney General Thomas Carluccio, at 484.674.2899.

      Notice:     123                              Subpoena:  1388

 Exhibit "C"

[Schofield Affidavit of Special Prosecutor]

# AFFIDAVIT

COMMONWEALTH OF PENNSYLVANIA         :
                                     : SS
COUNTY OF MONTGOMERY                 :

BEFORE ME, the undersigned, personally appeared **Thomas E. Carluccio, Esq.** ("Affiant"), who upon first being duly sworn by me, deposed upon her/his oath and stated as follows:

1. I, Thomas E. Carluccio, Esquire, am the Special Prosecutor to the 35th Statewide Grand Jury ("35th Investigating Grand Jury"), and the Affiant hereunder.

2. **Memorandum prepared by William Davis, Esq. Deputy Attorney General and assigned Prosecutor to the 29th Investigating Grand Jury-** I hereby state that the 35th Investigating Grand Jury received testimony from one or more witnesses that a Memorandum prepared by William Davis, Esq. Deputy Attorney General and assigned Prosecutor to the 29th Investigating Grand Jury was made available within an office environment to staff and/or others, where the Memorandum was subsequently reviewed and delivered to unauthorized persons, including members of the press

3. **Recorded and Transcribed Statement of Special Agent Michael Miletto** - Moreover, I hereby state that 35th Investigating Grand Jury received testimony from one or more witnesses that a recorded and transcribed statement of Special Agent Michael Miletto pertaining to his activities and knowledge of particulars associated with the subject matter of the 29th Investigating Grand Jury was procured by one or more persons who did not participate in the said the 29th Investigating Grand Jury, and was subsequently reviewed and delivered to unauthorized persons, including members of the press.

4. For purposes of this Affidavit, I define the aforesaid Memorandum, and Recorded and Statement to be collectively referenced hereinafter as *"Confidential Records"* and are subject to prohibitions on their singular and collective disclosure to third persons by operation of 42 Pa.C.S. §4549(b).

5. The *Confidential Records* contain information which clearly identifies facts, witnesses and events which are part of the 29th Investigating Grand Jury, all of which is deemed part of the sealed record of such Grand Jury, and as such is secret and confidential, subject to disclosure upon application to the appropriate overseeing court.

6. Any disclosure of the *Confidential Records* or information thereto to unauthorized persons may represent criminal act(s) under 42 Pa.C.S. §4549(b). and/or 18 Pa.C.S. §5101.

7. It was disclosed to the 35th Investigating Grand Jury

8. Further,

v4b

9. The purpose in seeking the testimony of Attorney General Kane under the subject subpoena, is to determine if Attorney Kane maintains direct or inferential information on matters pertaining to the unauthorized disclosure of the existence and contents of the *Confidential Information* including without limitation: (a) what persons were present at the subject staff meetings and/or conferences; (b) whether she or others were aware of the presence of the *Confidential Information* at such staff meetings and/or conferences; (c) whether she or others were aware that the *Confidential Information* was at all times deemed private and confidential due its inclusion into the evidence of the 29th Investigating Grand Jury; (d) to explore whether Attorney General Kane maintains information to assist the Grand Jury in determining if the *Confidential Information* was reviewed, copied, possessed, discussed and/or distributed among one or more unauthorized third persons; and (e) the identity of those person(s) who impermissibly disclosed the *Confidential Information* to members of the press or the general public.

10. Upon reasonable information and belief, the Affiant hereby asserts that Attorney General Kane be compelled to testify and subject herself through the issued subpoena to a reasonable line of questioning on those issues as aforementioned, together with questions on concerns that may arise in the development of her testimony and such testimony is proper and warranted under the circumstances.

11. The Affiant hereby certifies that the testimony of Attorney General Kane is either: directly relevant and material to the investigation undertaken by 35th Investigating Grand Jury; or upon information and reasonable belief will lead to relevant and material information relating to the unauthorized disclosure of the *Confidential Information*.

12. The Affiant hereby states that the service of a subpoena upon Attorney General Kane for her testimony is warranted under the circumstances, represents a good-faith basis for compelling such testimony, and that Affiant seeks such testimony for no other inappropriate basis.

13. Affiant herein verifies that the statements in this Affidavit are both truthful and correct to the best of his knowledge, information and belief. Further, Affiant acknowledges that the statements made herein may be subject to the penalties of 18 Pa. C.S.A. 4904 relating to the falsification to authorities.

Thomas E. Carluccio, Esquire - Affiant
Special Prosecutor for the 35th Statewide Grand Jury

SWORN TO AND SUBSCRIBED

BEFORE ME THIS \17 DAY

OF ___OCTOBER___, 2014

The Hon. William R. Carpenter

 Exhibit "D"

[Order of 10/20/2014 of Supervising Judge Carpenter]

## IN THE COURT OF COMMON PLEAS
## MONTGOMERY COUNTY, PENNSYLVANIA

| | |
|---|---|
| IN RE: | : SUPREME COURT OF PENNSYLVANIA |
| | : NO. 176 M.D. MISC DKT. 2012 |
| THE THIRTY-FIVE STATEWIDE | : |
| | : MONTGOMERY COUNTY COMMON PLEAS |
| INVESTIGATING GRAND JURY | : M.D. 1424-2014 |
| | : |
| | : NOTICE NO. 123 |

## ORDER

AND NOW, this 20th day of October, 2014, upon consideration of the Motion to Quash Grand Jury Subpoena containing also a "Motion for the Production of the Order appointing Thomas Carluccio as Special Prosecutor and any documents related to that Appointment" filed by Amil M. Minora, Esquire and Gerald L. Shargel, Esquire for Attorney General Kathleen Kane, the following Order is entered:

1. IT IS ORDERED that the Motion for the Production of the Order appointing Thomas Carluccio as Special Prosecutor and any documents related to that Appointment is GRANTED.

2. IT IS ORDERED that after an in camera hearing was conducted in which arguments of counsel for Attorney Kathleen Kane and those of the Special Prosecutor were considered and their respective memorandum were reviewed; and after it was determined that a challenge to empanelment statements and submission notice were without any

merit, and upon consideration of the "Schofield" affidavit, a redacted copy of which was furnished to Attorney General Kathleen Kane, which showed that the information sought from Attorney General Kane is relevant to the 35th Statewide Grand Jury investigation, is within the Grand Jury's jurisdiction and that the information is sought in good faith and not for another purpose, therefore, the Motion to Quash Grand Jury Subpoena is **DENIED**.

IT IS HEREBY **ORDERED** and **DECREED** that Attorney General Kane must appear before the 35th Statewide Investigating Grand Jury to testify on Tuesday, October 21, 2014.

**BY THE COURT:**

_____
**WILLIAM R. CARPENER,** J.
**Supervising Judge**

**Copies sent on October 20, 2014**
**By Electronic Mail to:**
Thomas E. Carluccio, Esquire
Amil M. Minora, Esquire
Gerald L. Shargel, Esquire

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA

IN RE:                                      :
                                            :
THE STATEWIDE                               :
                                            :   MONTGOMERY COUNTY COMMON PLEAS
INVESTIGATING GRAND JURIES                  :
                                            :
                                            :
                                            :   In Re: Powers and Responsibilities of
                                            :   Special Prosecutor Exercising
                                            :   Extraordinary Jurisdiction; on Allegations that
                                            :   Secret Grand Jury or Related Information was
                                            :   Unlawfully and/or Negligently
                                            :   Accessed/Released/Compromised

## ORDER

AND NOW, this 29th day of May, 2014, after "preliminary investigation"; this court in its capacity as Supervising Judge of the 35th Statewide Investigating Grand Jury, finds there are reasonable grounds to believe a further more substantive investigation is warranted into allegations that statewide Grand Jury secrecy may have been compromised: It is therefore ORDERED and DIRECTED by this Court in accordance with the authority vested in it by the 1078 Pennsylvania Investigating Grand Jury Act of 1978, 42 Pa. C.S. § 4541, *et seq.* and the procedural rules that followed (Pa.R.Crim.P 220, *et seq.*) as well as relevant case law; that **THOMAS E. CARLUCCIO, ESQUIRE,** be and is hereby appointed Special Prosecutor with full power, independent authority and jurisdiction to investigate and prosecute to the maximum extent authorized by law any offenses related to any alleged illegal disclosure of information protected by the law and/or intentional and/or

negligent violations and rules of Grand Jury secrecy as to a former Statewide Investigating Grand Jury, such as;

1. 42 Pa. C.S. § 4549(b) Disclosure of proceedings by participants other than "witnesses..."all such persons shall be sworn to secrecy, and shall be in contempt of court if they disclose/reveal any information which they are sworn to keep secret."

2. 18 Pa. C.S. § 5101 Obstructing administration of law or other governmental function – "a person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty.

3. Any other applicable offense.

It is FURTHER ORDERED by the Court that the Special Prosecutor:

1. Shall use any appropriate currently empaneled Grand Jury to investigate any alleged or suspected violations of secrecy or concomitant crimes related to such.

2. Shall have the right to request an application for an immunity order from the Attorney General.

3. Shall have the right to employ all appropriate resources including a minimum of one investigator and if necessary, one support staff.

# AFFIDAVIT

COMMONWEALTH OF PENNSYLVANIA   :
                                        : SS

COUNTY OF MONTGOMERY            :

        BEFORE ME, the undersigned, personally appeared **Thomas E. Carluccio, Esq.** ("Affiant"), who upon first being duly sworn by me, deposed upon her/his oath and stated as follows:

1. I, Thomas E. Carluccio, Esquire, am the Special Prosecutor to the 35th Statewide Grand Jury ("35th Investigating Grand Jury"), and the Affiant hereunder.

2. **Memorandum prepared by William Davis, Esq. Deputy Attorney General and assigned Prosecutor to the 29th Investigating Grand Jury-** I hereby state that the 35th Investigating Grand Jury received testimony from one or more witnesses that a Memorandum prepared by William Davis, Esq. Deputy Attorney General and assigned Prosecutor to the 29th Investigating Grand Jury was made available within an office environment to staff and/or others, where the Memorandum was subsequently reviewed and delivered to unauthorized persons, including members of the press

3. **Recorded and Transcribed Statement of Special Agent Michael Miletto** - Moreover, I hereby state that 35th Investigating Grand Jury received testimony from one or more witnesses that a recorded and transcribed statement of Special Agent Michael Miletto pertaining to his activities and knowledge of particulars associated with the subject matter of the 29th Investigating Grand Jury was procured by one or more persons who did not participate in the said the 29th Investigating Grand Jury, and was subsequently reviewed and delivered to unauthorized persons, including members of the press.

4. For purposes of this Affidavit, I define the aforesaid Memorandum, and Recorded and Statement to be collectively referenced hereinafter as "*Confidential Records*" and are subject to prohibitions on their singular and collective disclosure to third persons by operation of 42 Pa.C.S. §4549(b).

5. The *Confidential Records* contain information which clearly identifies facts, witnesses and events which are part of the 29th Investigating Grand Jury, all of which is deemed part of the sealed record of such Grand Jury, and as such is secret and confidential, subject to disclosure upon application to the appropriate overseeing court.

6. Any disclosure of the *Confidential Records* or information thereto to unauthorized persons may represent criminal act(s) under 42 Pa.C.S. §4549(b). and/or 18 Pa.C.S. §5101.

7. It was disclosed to the 35th Investigating Grand Jury

8. Further,

9. The purpose in seeking the testimony of Attorney General Kane under the subject subpoena, is to determine if Attorney Kane maintains direct or inferential information on matters pertaining to the unauthorized disclosure of the existence and contents of the *Confidential Information* including without limitation: (a) what persons were present at the subject staff meetings and/or conferences; (b) whether she or others were aware of the presence of the *Confidential Information* at such staff meetings and/or conferences; (c) whether she or others were aware that the *Confidential Information* was at all times deemed private and confidential due its inclusion into the evidence of the 29th Investigating Grand Jury; (d) to explore whether Attorney General Kane maintains information to assist the Grand Jury in determining if the *Confidential Information* was reviewed, copied, possessed, discussed and/or distributed among one or more unauthorized third persons; and (e) the identity of those person(s) who impermissibly disclosed the *Confidential Information* to members of the press or the general public.

10. Upon reasonable information and belief, the Affiant hereby asserts that Attorney General Kane be compelled to testify and subject herself through the issued subpoena to a reasonable line of questioning on those issues as aforementioned, together with questions on concerns that may arise in the development of her testimony and such testimony is proper and warranted under the circumstances.

11. The Affiant hereby certifies that the testimony of Attorney General Kane is either: directly relevant and material to the investigation undertaken by 35th Investigating Grand Jury; or upon information and reasonable belief will lead to relevant and material information relating to the unauthorized disclosure of the *Confidential Information.*

12. The Affiant hereby states that the service of a subpoena upon Attorney General Kane for her testimony is warranted under the circumstances, represents a good-faith basis for compelling such testimony, and that Affiant seeks such testimony for no other inappropriate basis.

13. Affiant herein verifies that the statements in this Affidavit are both truthful and correct to the best of his knowledge, information and belief. Further, Affiant acknowledges that the statements made herein may be subject to the penalties of 18 Pa. C.S.A. 4904 relating to the falsification to authorities.

_____
Thomas E. Carluccio, Esquire - Affiant
Special Prosecutor for the 35th Statewide Grand Jury

SWORN TO AND SUBSCRIBED

BEFORE ME THIS 17 DAY

OF OCTOBER , 2014

_____
The Hon. William R. Carpenter

 Exhibit "E"
[Subpoena No#2]



## Commonwealth of Pennsylvania

# STATEWIDE INVESTIGATING GRAND JURY
## ———————— SUBPOENA ————————

TO:  ATTORNEY GENERAL        :SUPREME COURT OF PENNSYLVANIA
       KATHLEEN KANE           :NO. 176 M.D. MISC. DKT. 2012
                                   :MONTGOMERY COUNTY COMMON PLEAS
                                   :M.D. 2644-2012

1.  YOU are ORDERED to appear as a witness before the PENNSYLVANIA STATEWIDE INVESTIGATING GRAND JURY, 1000 Madison Avenue (corner of Trooper and Van Buren Roads), Third Floor, Norristown, Pennsylvania, on Tuesday, October 21, 2014, at 8:00 O'clock A.M. to testify and give evidence regarding alleged violations of the laws of the Commonwealth of Pennsylvania and to remain until excused.

2.  YOU are further ORDERED:

FAILURE to attend may cause a warrant to be issued for your arrest and will make you liable under penalty of law for contempt of Court.

DATED:  September 25, 2014                      *William R. Carpenter*

                                         Hon.  William R. Carpenter
                                         *Supervising Judge*

If you have any questions about your appearance, contact Deputy Attorney General Thomas Carluccio, at 484.674.2899.

Notice:  123                          Subpoena:  1427

 Exhibit "F"
[Subpoena No#3]



# STATEWIDE INVESTIGATING GRAND JURY
## ——————— SUBPOENA ———————

TO: ATTORNEY GENERAL            :SUPREME COURT OF PENNSYLVANIA
    KATHLEEN KANE               :NO. 176 M.D. MISC. DKT. 2012
                                :MONTGOMERY COUNTY COMMON PLEAS
                                :M.D. 2644-2012


1.     YOU are ORDERED to appear as a witness before the PENNSYLVANIA STATEWIDE INVESTIGATING GRAND JURY, 1000 Madison Avenue (corner of Trooper and Van Buren Roads), Third Floor, Norristown, Pennsylvania, on Monday, November 17, 2014 through Friday, November 21, 2014, at 8:00 O'clock A.M. to testify and give evidence regarding alleged violations of the laws of the Commonwealth of Pennsylvania and to remain until excused.


2.     YOU are further ORDERED:




FAILURE to attend may cause a warrant to be issued for your arrest and will make you liable under penalty of law for contempt of Court.

DATED: October 29, 2014                       *William R. Carpenter*

                                              _____

                                              **Hon. William R. Carpenter**
                                              *Supervising Judge*


If you have any questions about your appearance, contact Special Prosecutor Thomas Carluccio, at 484.674.2899.


            Notice:    123                    Subpoena: 1502

 Exhibit "G"

[9/17/14 Order of Supervising Judge Carpenter]

### IN THE COURT OF COMMON PLEAS
### MONTGOMERY COUNTY, PENNSYLVANIA

IN RE:

THE THIRTY-FIFTH STATEWIDE

INVESTIGATING GRAND JURY

: SUPREME COURT OF PENNSYLVANIA
: NO. 176 M.D. MISC. DKT. 2012

: MONTGOMERY COUNTY COMMON PLEAS
: M.D. 2644-2012

: NOTICE NO. 123

### ORDER

AND NOW, this 17th day of September, 2014, it is hereby ORDERED that the attached,

filed on September 17th, 2014, be and is hereby sealed.

WILLIAM R. CARPENTER
Supervising Judge
Thirty-Fifth Statewide Investigating
Grand Jury

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA

IN RE:                                    : SUPREME COURT OF PENNSYLVANIA
                                          : NO. 176 M.D. MISC DKT. 2012
THE THIRTY-FIVE STATEWIDE                 :
                                          : MONTGOMERY COUNTY COMMON PLEAS
INVESTIGATING GRAND JURY                  : M.D. 1424-2014
                                          :
                                          : NOTICE NO. 123

## ORDER

AND NOW, this 17th day of September, 2014, in the exercise of its discretion after an in camera hearing and a finding of substantial evidence, this Court issued a Protective Order;

And upon consideration of the Motion for Reconsideration filed by the Office of Attorney General relating to the Order of Court issued August 27, 2014,

IT IS ORDERED that the Motion is GRANTED in part as to Paragraphs 2 and 5 of said Order, and the following persons only shall be subject to Paragraphs 2 and 5 of said Order:

1. Any person who has been sworn to Grand Jury secrecy.

2. Any person who has or had access to any Grand Jury information.

3. Any person associated with the J. Whyatt Mondesire proceedings and investigation.

Additionally, Paragraph 7 of said Order is modified to allow communication regarding the Order with counsel for a person subject to the Order, for purposes of appeal, and for any other, similar purpose required by law.

BY THE COURT:

WILLIAM R. CARPENTER,                    J.
Supervising Judge

Copies sent on September 17, 2014
By First Class Mail to:
Thomas E. Carluccio, Esquire
James Barker, Esquire

FILED
11/18/2014
Supreme Court
Middle District

## IN THE SUPREME COURT OF PENNSYLVANIA
## HARRISBURG DISTRICT

IN RE:  THE THIRTY-FIVE STATEWIDE
INVESTIGATING GRAND JURY

PETITION OF:  ATTORNEY GENERAL
KATHLEEN G. KANE

SUPREME COURT OF PENNSYLVANIA NO.
176 M.D. MISC. DKT. 2012

MONTGOMERY COUNTY COMMON PLEAS
M.D. 2644-2012

Docket No. 175 MM 2014

**UNSEALED PER
ORDER OF THE
COURT DATED
AUGUST 26, 2015**

## MOTION FOR ADMISSION PRO HAC VICE

Amil M. Minora, Esq., counsel for Attorney General Kathleen Kane in the above case, files this motion for the admission of Gerald L. Shargel, Esq., averring as follows:

1.   This is representation of Attorney General Kathleen Kane before the above-captioned Court and all related matters.

2.   I am a member in good standing of the bar of the Commonwealth of Pennsylvania and have been retained to serve as attorney of record and local counsel for Plaintiff in the case at bar.

3.   Attached hereto as Exhibit "A" is my affidavit as required of the sponsoring attorney by Pa.R.Civ.P. 1012.1(d)(2).

4.   Attached hereto as Exhibit "B" is the affidavit of Gerald L. Shargel, Esq. as required by Pa.R.Civ.P. 1020.1(c).

5.   Attached is Exhibit "C", Certificate of Good Standing of Gerald L. Shargel, Esq.

6.   Attached is Exhibit "D", receipt from Pennsylvania Interest on Lawyers Trust Accounts Board.

7.   As is more fully set forth in my Affidavit, I am acquainted with Gerald L. Shargel, Esq. and can attest to his fitness for admission *pro hac vice*.

8.   Good cause exists for admitting Gerald L. Shargel, Esq. on a *pro hac vice* basis because Attorney General Kathleen Kane has requested that Gerald L. Shargel, Esq. represent her in this case.

Received in Supreme Court

NOV 1 8 2014

Middle

## IN THE SUPREME COURT OF PENNSYLVANIA
## HARRISBURG DISTRICT

IN RE:

THE THIRTY-FIVE STATEWIDE
INVESTIGATING GRAND JURY

: : Docket No. 175 MM 2014

SUPREME COURT OF PENNSYLVANIA NO.
176 M.D. MISC. DKT. 2012

MONTGOMERY COUNTY COMMON PLEAS
M.D. 2644-2012

## AFFIDAVIT OF AMIL M. MINORA, ESQUIRE

Pursuant to Pennsylvania Rule of Civil Procedure 1012.1(d)(2), I declare that the following facts are true, to the best of my knowledge, information and belief:

1. After reasonable investigation, I believe Gerald L. Shargel, Esq. is a reputable and competent attorney and I am in a position to recommend Gerald L. Shargel, Esq.'s admission.

2. I aver that the information required by Section 81.504 of the IOLTA regulations has been provided to the IOLTA Board.

3. The fee required by Section 81.505(a) of the IOLTA regulations has been paid and a copy of the fee payment certification from the IOLTA Board is attached.

4. I sponsored Gerald L. Shargel's admission *pro hac vice* in a related matter before the Montgomery County, Pennsylvania Court of Common Pleas, captioned M.D. 2644-2012.

5. I aver that any proceeds that are received from this representation of Attorney General Kathleen Kane in which Gerald L. Shargel, Esq. is granted admission *pro hac vice* shall be received, held, distributed and accounted for in accordance with Rule 1.15 of the Pennsylvania Rules of Professional Conduct, including the IOLTA provisions thereof, if applicable.

_____
Amil M. Minora, Esquire

COMMONWEALTH OF PENNSYLVANIA :

: ss

COUNTY OF  *LACKAWANNA*  :

On this 17 day of November, 2014, before me, a Notary Public, the undersigned officer, personally appeared, Amil M. Minora, Esquire, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledge the same to her act and deed for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and notarial seal.

*Nancy M. Haggerty*

COMMONWEALTH OF PENNSYLVANIA

Notarial Seal
Nancy M. Haggerty, Notary Public
City of Scranton, Lackawanna County
My Commission Expires May 13, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES



# Appellate Division of the Supreme Court of the State of New York Second Judicial Department

I, Aprilanne Agostino, Clerk of the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, do hereby certify that Gerald Lawrence Shargel was duly licensed and admitted to practice as an Attorney and Counselor-at-Law in all the courts of the State, according to the laws of the State and the court rules and orders, on the 17th day of December 1969, has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counselors-at-Law on file in my office, has duly registered with the administrative office of the courts, and according to the records of this court is in good standing as an Attorney and Counselor-at-Law.



In Witness Whereof, I have hereunto set my hand and affixed the seal of said Appellate Division on November 14, 2014.

Clerk of the Court

## IN THE SUPREME COURT OF PENNSYLVANIA
### HARRISBURG DISTRICT

IN RE:

THE THIRTY-FIVE STATEWIDE
INVESTIGATING GRAND JURY

Docket No. 175 MM 2014

SUPREME COURT OF PENNSYLVANIA NO.
176 M.D. MISC. DKT. 2012

MONTGOMERY COUNTY COMMON PLEAS
M.D. 2644-2012

### AFFIRMATION

Gerald L. Shargel, being duly sworn, states under the penalty of perjury that the

following is true and correct:

I.      I am an attorney duly licensed to practice in New York State. I was first admitted
        to the New York State bar in December, 1969. My New York State Bar
        Identification Number is 1068915. I submit this affirmation in support of my
        application for admission *pro hac vice* in the above captioned matter.

II.     I am also authorized to practice in the following jurisdictions:
        a.      Eastern District of New York (January 8, 1971)
        b.      Southern District of New York (January 11, 1971)
        c.      United States Court of Appeals for the Second Circuit (January 12, 1971)
        d.      United States Court of Appeals for the Third Circuit (September 7, 1977)
        e.      United States Court of Appeals for the Fifth Circuit (July 8, 1974)
        f.      United States Court of Appeals for the Ninth Circuit (January 9, 1980)
        g.      Supreme Court of the United States (October 23, 1973)

III.    I have been admitted to practice *pro hac vice* in the District of New Jersey, the
        Northern District of Florida, the Eastern District of Pennsylvania, and the Eastern
        District of Virginia.

IV.     I have never been suspended, disbarred, or otherwise disciplined in any
        jurisdiction.

V.      I have never been subject to any disciplinary proceedings in any jurisdiction.

VI.     I am admitted *pro hac vice* in a related matter before the Montgomery County,
        Pennsylvania Court of Common Pleas, captioned M.D. 2644-2012.

1

VII.    I will comply with and be bound by all applicable statutes, case law, and procedural rules of the Commonwealth of Pennsylvania, including the Pennsylvania Rules of Professional Conduct and will submit to the jurisdiction of the Pennsylvania courts and the Pennsylvania Disciplinary Board with respect to acts and omissions occurring during my appearance in this matter.

VIII.   I consent to the appointment of Amil Minora, Esq., 700 Vine Street, Scranton, PA 18510, as the agent upon whom service of process shall be made for all actions, including disciplinary actions, that may arise out of the practice of law in this matter.

Dated: November 14, 2014
        New York, NY

Gerald L. Shargel

2

| From: | Isabelle Wozniak <isabelle.wozniak@pacourts.us> |
| --- | --- |
| Sent: | Friday, November 14, 2014 2:43 PM |
| To: | Shargel, Gerald L. |
| Subject: | Pennsylvania Interest on Lawyers Trust Account Board Customer Receipt/Purchase Confirmation |

PA IOLTA Board
P.O. Box 62445
Harrisburg, PA 17106-2445
www.paiolta.org

# Thank you for your order!

**Order Information**

| Merchant: | Pennsylvania Interest on Lawyers Trust Account Board |
| --- | --- |
| Description: | Pro Hac Vice Application Fee |
| Invoice Number: | PHV20141114144148 |
| Customer ID: | NY1068915 |

**Billing Information**                    **Shipping Information**
Gerald Shargel
132 E. 72nd St.
New York, NY 10021
gshargel@winston.com
212-294-2637
Fax: 212-294-4700

**Total: US $202.75**

**VISA**

| Date/Time: | 14-Nov-2014 14:43:02 EST |
| --- | --- |
| Transaction ID: | 6666414928 |

The total includes a $2.75 convenience fee.

1

SUPREME COURT OF PENNSYLVANIA
# PENNSYLVANIA INTEREST ON
# LAWYERS TRUST ACCOUNT BOARD

November 17, 2014


GERALD L SHARGEL, Esq.
WINSTON & STRAWN LLP
200 PARK AVE.
NEW YORK, NY 10166


SENT TO GERALD L SHARGEL VIA Email: GSHARGEL@WINSTON.COM


Dear Attorney SHARGEL:


This letter serves as the fee payment certification referenced in 204 Pa Code §81.503 and acknowledges receipt of the $200.00 fee paid by Online Payment on this date related to your pursuit for admission *pro hac vice* in the case identified as in re: The Thirty-Five Statewide Investigating Grand Jury, no. 175 MD 2014, filed in the Supreme Court of Pennsylvania.

You should refer to Pa Rule of Civil Procedure 1012.1, local court rules, and other regulations of 204 Pa Code §81.501 et. seq. concerning additional requirements related to seeking *pro hac vice* admission.

Sincerely,

Stephanie S. Libhart
Executive Director

cc: AMIL MICHAEL MINORA, Esq.

     amil.minora@gmail.com

Pennsylvania Judicial Center
601 Commonwealth Ave., Ste. 2400
PO Box 62445, Harrisburg, PA 17106-2445
717/238-2001 · 888/PA-IOLTA (724-6582) · 717/238-2003 FAX
paiolta@pacourts.us · www.paiolta.org

Administering Pennsylvania's Interest On Lawyers Trust Account (IOLTA) Program

**UNSEALED PER ORDER OF
THE COURT DATED
AUGUST 26, 2015**

**IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT**

In Re:  The Thirty-Five Statewide   :   No. 175 MM 2014
Investigating Grand Jury            :
                                    :
                                    :
                                    :
Petition of:  Attorney General Kathleen G.:  Motion for Admission Pro Hac Vice
Kane                                :
                                    :

## ORDER

**AND NOW**, this 19th day of November, 2014, the Motion for Admission Pro Hac Vice of Gerald L. Shargel is hereby **granted**.


_____
Deputy Prothonotary